## LEWIS v. FLORIDA POWER & LIGHT CO.

No. 11338.

Circuit Court of Appeals, Fifth Circuit.

April 5, 1946.

Paul H. Brinson, of Coral Gables, Fla., and E. P. Ellis, of Miami, Fla., for appellant.

Bessie Margolin, Asst. Sol., U.S. Dept. of Labor, of Washington, D. C., for amicus curiae.

Robert H. Anderson and Will M. Preston, both of Miami, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Newton Lewis, in behalf of himself and in behalf of others who are similarly situated (hereinafter referred to as plaintiffs), sued to recover compensation allegedly due for overtime work, together with liquidated damages, attorney's fees, and court costs, under the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The defendant company is engaged in the generation of electrical energy at its plants in several towns and cities within the state of Florida, and plaintiffs were employed as guards to protect the company's property. Plaintiffs alleged that they were employed by the defendant; in its answer defendant alleged that they were employed by the sheriff of Dade County, Florida.

When the case came on for trial before the court without a jury, the court defined the issues as two-fold, to-wit: (1) Whether the Fair Labor Standards Act extended to the employees of the defendant and (2) whether the plaintiffs were employees of the defendant or of the sheriff of Dade County, Florida. Being of the opinion that if the Act did not extend to the employees of defendant it would not be necessary to pass on the question whether plaintiffs were employed by defendant or by the sheriff, the court decided first to hear the evidence on and try out the first issue. To this end, the parties entered into and submitted a stipulation of facts. Upon the facts stipulated, the court below held that "the defendant is neither engaged in 'commerce' or 'in the production of goods for commerce' and therefore the Fair Labor Standards Act does not extend to employees of the defendant." From the judgment

752

based upon this holding, this appeal was prosecuted.

Section 7(a) of the Fair Labor Standards Act provides:

"No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce * * * unless such employee receives compensation for his employment * * * at a rate not less than one and one-half times the regular rate at which he is employed."

Section 3(b, i, j) provides:

" 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof.

* * * * * *

" 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, * * *.

" 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods [for commerce] if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

■ While the nature of the employer's business is not determinative of the rights of employees under the Act because the application of the Act depends upon the character of the employees' activities. Overstreet v. North Shore Corporation, 1943. 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656, nevertheless, unless an employer is "engaged in commerce" or engaged "in the production of goods for. commerce," the employees are not "engaged in commerce" or engaged "in the production of goods for commerce." Mabee v. White Plains Publishing Co., 1945, 66 S.Ct. 511, 90 L.Ed. ——. Therefore, it is proper to inquire whether the court below erred in its holding that the defendant is neither engaged in "commerce" nor engaged "in the production of goods for commerce."

The parties stipulated that the defendant's customers include the Western Union Telegraph Co., 'the telephone companies operating in the area served by the defend-

ant, Florida East Coast Ry. Co., Atlantic Coast Line Railroad, Seaboard Air Line Railroad, newspapers, radio stations, airports, bus lines, governmental agencies and post offices, Army and Navy camps, municipalities, other public and quasi-public corporations and establishments manufacturing and mining goods for shipment and sale outside the state of Florida; that the defendant neither owns nor leases any property outside of the state of Florida and has no physical connection with the lines of any other power company operating outside the state of Florida except a physical connection ordered by the Federal Power Commission under the provisions of Section 202(c) and (d) of the Federal Power Act, 16 U.S.C.A. § 824(c, d); and that this connection was ordered after a finding by the Commission that the connection would best meet an emergency growing out of the war and would serve the public interest. The parties further stipulated that the Western Union Telegraph Co. and the telephone exchanges use electrical energy furnished by the defendant to transmit messages from Florida into other states and to light their places of business in the general operation of their agencies and exchanges; that the railroads use electrical energy furnished by the defendant to light and operate signal devices governing trains transporting goods and passengers to and from the state of Florida and other states; and that the airports employ electrical energy furnished by defendant to light and operate signal devices for the use of planes which transport goods and passengers in interstate commerce; and that the radio stations use electrical energy to light their buildings and to operate their equipment for receiving and transmitting radio broadcasts which carry regular CBS, NBC, and Mutual programs or broadcasts; that the newspapers use electrical energy to light their buildings and operate their presses, and that some of the newspapers to which such electrical energy is furnished by the defendant have out-of-state circulation.

In the case of Roland Electric Co. v. Walling, 66 S.Ct. 413, 415, 90 L.Ed. ——, the Supreme Court held that employees of the Roland Electric Co. who repaired, rebuilt, and reconditioned electrical motors and repaired and installed electric wiring for commercial firms manufacturing goods for interstate commerce were "engaged * * * in the production of goods for commerce." The Supreme Court in that case said:

"Putting these definitions together in their own terms, § 6(a), as applied to the facts of this case, provides in effect that 'Every employer shall pay (not less than the required minimum wages) to each of his employees who is employed in any process or occupation necessary to the production, in any state, of any part or ingredient of any articles or subjects of trade, commerce or transportation, of any character, for trade, commerce or transportation among the several states.' This does *not* require the employee to be directly 'engaged in commerce' among the several states. This does *not* require the employee to be employed even in the production of an article which *itself* becomes the subject of commerce or transportation among the several states. It is enough that the employee be employed, for example, in an occupation which is necessary to the production of a part of any other 'articles or subjects of commerce of any character' which are produced for trade, commerce or transportation among the several states. This does *not* require an employee to be employed exclusively in the specified occupation. This does *not* require that the occupation in which he is employed be *indispensable* to the production under consideration. It is enough that his occupation be '*necessary to the production.*' There may be alternative occupations that could be substituted for it but it is enough that the one at issue is needed in such production and would, if omitted, handicap the production.

\*　　\*　　\*　　\*　　\*　　\*

"The work of petitioner's employees has 'such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation "necessary to the production of goods for commerce." ' [A. B.] Kirschbaum Co. v. Walling, 316 U.S. 517, 525, 526, 62 S.Ct. 1116, 1121, 86 L.Ed. 1638, 1649. The relation of petitioner's employees to the production of goods for interstate commerce by petitioner's customers is fully as close and 'necessary' as was that of the loft building watchmen and porters to the petitioner's tenants in [A. B.] Kirschbaum Co. v. Walling (U. S.) supra; the manufacturing plant watchman of the respondent in Walton v. Southern Package Corporation, 320 U.S. 540, 64 S.Ct. 320, 88 L.Ed. 298, or the

fire guards subject to call in Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118. \* \* \*"

■ The use by the defendant's customers of electrical energy furnished by the defendant in the manufacture of goods for interstate commerce, for the transportation of goods and persons in interstate commerce, for the transmission of messages and other communications in interstate commerce, and for other interstate-commerce activities was just as vital to the interstate activities of defendant's customers as the repair of electrical motors was to the employer in the Roland Electric Co. case. Electrical energy is just as important in the operation of electrical devices as is the repair of motors.

After the Roland Electric Co. case the Supreme Court in Mabee v. White Plains Publishing Co., supra, held that the publisher of a newspaper having some out-of-state subscribers is engaged in the production of goods for commerce, within the meaning of the Fair Labor Standards Act.

Still later the Supreme Court held that window cleaners employed by a corporation that had contracted to clean the windows of industrial plants engaged in the production of goods for interstate commerce were "engaged \* \* \* in the production of goods for commerce." The Court in that case \* said:

" \* \* \* The greater part of this work was done on windows on premises used by respondent's customers in the production of goods for interstate commerce. Under the circumstances of this case the cleaning of the windows of industrial plants by the employees of the respondent is an occupation necessary to the production of the goods produced in those plants. If the services rendered in this case had been rendered by employees of respondent's customers engaged in the production of goods for interstate commerce, those employees would have come under the Act. Respondent's employees are not to be excluded from such coverage merely because their employment to do the same work was under independent contracts. \* \* \*"

■ The defendant in its brief, however, argues:

"Since the stipulation of facts did not contain any evidence whatsoever that the appellant, in the course of his employment,

---

\* Martin v. Michigan Window Cleaning Co., 66 S.Ct. 379, 380, 90 L.Ed. —.

was as defendant's employee, engaged in interstate commerce or in the production of goods, within the meaning of the Act, and that such production of goods was for interstate commerce * * *, and since appellant did not adduce or proffer evidence whatsoever in such connection, he has not carried the burden of proof and hence the decree should be affirmed."

We do not find any merit in this contention. Because of the procedure of the court below, plaintiffs had no opportunity to introduce evidence to prove either that they were the employees of the defendant or that they were engaged in commerce or engaged in the production of goods for commerce.

Applying the words of the Supreme Court in Mabee v. White Plains Publishing Co., supra, to the case before us, "We hold that respondent is engaged in the production of goods for commerce. That, of course, does not mean that these petitioners, its employees, are covered by the Act. The applicability of the Act to them is dependent on the character of their work. * * * We express no opinion on that phase of the case, [as the court below did not pass on it]. Since the judgment below must be reversed, the question whether the Act is applicable to these employees will be open on the remand of the cause." [66 S.Ct. 514.]

The judgment appealed from is reversed, and the cause is remanded for proceedings not inconsistent with the views herein expressed.

Reversed and remanded.