## Fultz v. United States Trust Co.

June 4, 1946.

494

Eugene Mosley and H. Appleton Federa for appellant.

Booth & Booth for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

This was an action by Frank Fultz, the appellant, a night watchman of an office building in Louisville, against United States Trust Company, the appellee, a banking concern which owned and partially occupied said building and employed appellant as night watchman. Recovery of $2936.26 was sought for overtime wages and liquidated damages besides a reasonable attorney fee. The action was brought within and under the provisions of the Federal Fair Labor Standards Act, which is an act of the United States Congress fixing minimum wages and maximum hours for various types of employees engaged in the direct flow or movement of interstate commerce or engaged in the production of goods for such commerce.

The trial court sustained a general demurrer to appellant's petition and the only question arising on this appeal is whether or not appellant stated a legal cause of action against appellee in the petition filed in the court below.

This court believes and now holds that appellant's petition did not state a legal cause of action and that accordingly the trial court correctly sustained appellee's general demurrer to such petition. Since the trial court's memorandum opinion has dealt ably and exhaustively with this problem, such opinion is now copied at full length and same is approved and adopted by this court:

"The plaintiff instituted this action against the United States Trust Company, which does a general banking business, on the 21st day of May, 1943.

"The plaintiff alleges in his petition that on the 15th day of October, 1939, he was employed by the de-

fendant, United States Trust Company, as a night watchman, and that his duties consisted of watching and protecting the building where the bank is located, as well as other parts of the building where other offices were located, and to carry mail delivered by the mailman to the offices of the bank at eight o'clock at night, and to other offices located in the building, and to do all and generally, things ordinarily and necessarily done by a night watchman for a bank engaged in the general banking business.

"It is further alleged in the plaintiff's petition that he was to report for duty each day at six o'clock p. m., and remain on duty from six p. m. to 6 a. m. the following morning; and that he had no time off during the period, and that he worked, beginning October 15, 1939, to April 6, 1941, each day a period of twelve hours continually, or for a period of eighty-four hours each week during said time.

"It is further alleged that on April 6, 1941, he was ordered by the defendant to begin working fifty-two hours per week.

"Plaintiff further alleged in his petition that he worked in all from October 24, 1940, to April 6, 1941, forty-four hours overtime for each and every week, consisting of twenty-three weeks, and that he is entitled to overtime at the rate of forty-five cents per hour for each of said weeks, or during the above period $19.80 overtime for twenty-three weeks, amounting to $455.40. In all, it is alleged in the petition, that his overtime amounted to $1,468.13; and he asks an additional sum of $1,468.13 as liquidated damages, or a total of $2,936.26; and in addition thereto, an attorney's fee for his counsel.

"The very first question to determine is whether or not the plaintiff himself was engaged in interstate commerce, or in the manufacture of goods for interstate commerce.

"It will be conceded by everyone that a banking institution, such as the defendant in this case, is undoubtedly engaged in interstate commerce; and the problem that we have to solve is whether or not, that being true, a night watchman, employed by the defendant, and as alleged in the plaintiff's petition, is also engaged in interstate commerce; and in order to determine this question,

it is necessary to examine the decisions of courts of last resort in cases similar to the one at bar.

"This court has read, and re-read, not only the briefs in this case by learned counsel on both sides, but various authorities submitted in those briefs and many in pamphlet form, and other authorities in addition thereto, in which this question, it seems to the court, has been considered more or less with considerable care.

"I think it will be conceded that if the plaintiff, Frank Fultz, was engaged in interstate commerce, or in the production of goods for interstate commerce, he is entitled to recover under the Federal Wage & Hour Act. 29 U. S. C. A. secs. 206, 207, Title 'Labor.'

"Maximum Hours

"Section 7(a) provides that no employer shall, except as otherwise provided in this section.

" 'Employ any of his employees who is engaged in commerce or in the production of goods for commerce—

" '(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

" '(2) for a workweek longer than forty-two hours during the second year from such date, or

" '(3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.'

"The Court is of the opinion that the legal rule is well established that the work of an employee himself must be decisive, in determining whether he is engaged in interstate commerce; and even though his employer should be engaged in interstate commerce, or in the manufacture of goods for interstate commerce, yet the plaintiff would not be entitled to recover unless he, himself, is engaged in interstate commerce or in the manufacture of goods for interstate commerce.

"This question, it seems to the Court, has been decided in the case of McLeod v. Threlkeld, June 7, 1943,

319 U. S. 491, 63 S. Ct. 1248, 1252, 87 L. Ed. 1538, in which the Court said:

" 'It is not important whether the employer, in this case the contractor, is engaged in interstate commerce. *It is the work of the employee which is decisive.*'

"We, therefore, have the question presented on the general demurrer to the plaintiff's petition, whether or not the petition itself shows that a night watchman, engaged by the defendant, was engaged in interstate commerce or in the production of goods for commerce under the above entitled Act.

"In the case of Brandell v. Continental National Bank & Trust Co., D. C., Dec. 5, 1941, 43 F. Supp. 781 (Holly, J.) the plaintiffs contend that the Bank & Trust Company failed to pay them for overtime work at the rate prescribed by the Fair Labor Standards Act of 1938, 29 U. S. C. A. sec. 201 et seq. The defendant contended that the plaintiffs were not covered by the Act. The plaintiffs were janitors, engineers, elevator operators and other maintenance and service employees of a large national banking institution, which owned and maintained and operated a large office building in Chicago, twenty-two stories in height. The banking institution occupied the first six floors, half of the seventh floor, a part of the twenty-first floor and all of the twenty-second and twenty-third floors. The maintenance and service employees employed by the defendant were described as follows:

" 'Plaintiffs were employed by defendant as janitors, maintenance men, engineers, electricians, plumbers, firemen, steam fitters, window washers, scrubwomen, porters, porter guards, carpenters, watchmen, oilers, mechanics, utility men and elevator operators respectively and as such were engaged in work necessary to the maintenance of said building.'

"And the court held that the employees were not engaged in interstate commerce or in the production of goods for interstate commerce within the provisions of the Fair Labor Standards Act; and among other things the court said:

" 'Given the broadest interpretation, I do not see how the statute could be construed to cover these plaintiffs. We do not have here the case of a janitor or watch-

man or fireman in a building given over exclusively, or almost exclusively, to a business engaged in interstate commerce. Defendant occupies about one third of the building. The other portions are occupied by we know not whom (plaintiffs say some of the occupants are engaged in interstate commerce but that is their counsel's opinion. No facts are given from which the court can determine whether the allegation states the truth). As an office building the probabilities are that a large proportion of the tenants are lawyers, doctors, accountants, architects, engineers and the like. Plaintiffs give no service to defendant except such as is incidental to their maintenance and servicing of the entire building.

" 'Conceding that defendant is engaged in interstate commerce, as to which, however, I express no opinion, the hours provisions of the Act do not apply to all of its employes but only those engaged in the production of goods for interstate commerce and are not covered by the Fair Labor Standards Act.'

"Also in the case of Johnson v. Filstow, D. C., March 30, 1942, 43 F. Supp. 930, 932, the plaintiff was a janitor in an office building and he sued the owner of the building for alleged unpaid minimum wages and overtime compensation under the Fair Labor Standards Act of 1938. In that case the Court said:

" 'If the plaintiff's contentions be sustained on the theory that sweeping the office is necessary to interstate commerce, it should not stop with the janitor. A janitor must wear clothes; it is necessary that he be clothed before he could enter the office and sweep it. Therefore, the merchant who sold him the clothes would be supplying an essential to interstate commerce. Or, if the janitor had on a shirt that was made by his wife for his use in sweeping, the wife would also be engaged in the production of goods for commerce. It is necessary for the janitor to eat, and if by chance he bought a hamburger from a restaurant, the restauranteur would be furnishing an essential in interstate commerce. And so on, ad infinitum. Reductio ad absurdum!

" 'The purposes and objects of the Fair Labor Standards Act are admirable, but the penalties of the Act are severe. This Court does not believe that Congress intended that the Act should be stretched and strained to cover every phase of human activity to a

point of ridiculous absurdity, but rather that Congress intended merely to cover the employees of such employers as were engaged in interstate commerce, or in the production of goods for commerce, as those phrases are commonly understood. I know not what course others may take, but as for me I purpose to give this Act a practical and sensible construction so long as there is no impelling authority to the contrary.'

"It will therefore be seen from the cases quoted that the plaintiff was not engaged in interstate commerce or in the manufacture of goods for commerce within the meaning of the Act.

"This important question must be passed upon by the court of last resort in this state. It is very interesting. We could continue the discussion and make this opinion entirely too long. Numerous cases in conformity with those cited above could be recited, but no good would come of it.

"The court is therefore of the opinion that the plaintiff was not engaged in interstate commerce as a night watchman and in doing the things that it is alleged he did in the petition, for the defendant; and for that reason the demurrer to the plaintiff's petition is sustained and the plaintiff's petition dismissed. Exceptions for the plaintiff."

Wherefore, finding no error in the above judgment of the trial court based upon the authorities cited therein, the same is now hereby affirmed.