# Harlan-Wallins Coal Corporation v. David.

October 11, 1946.

James Sampson and Sampson & Sampson for appellant.

R. L. Pope and C. D. Bell for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—
Reversing.

On August 21, 1944, Luther David brought this action against his former employer, the Harlan-Wallins Coal Corporation, under the provisions of the Fair Labor Standards Act of 1938, 29 U. S. C. A. sec. 201 et seq., to recover unpaid minimum wages, overtime compensation, and an additional equal amount as liquidated damages plus attorneys' fees and costs. He prayed judgment against the defendant for $6,270.16 and a reasonable attorney's fee. Upon the trial of the case the court overruled the defendant's motion for a directed verdict in its favor, and the jury returned this verdict, signed by 10 of its members: "We the jury do agree and find for Mr. David 1 third of the amount asked for."

On this verdict a judgment was rendered adjudging that the plaintiff recover of the defendant the sum of $2,090.05, with 6% interest thereon from the date of the judgment.

Reversal of the judgment is sought on the following grounds: (1) Appellee was not engaged in commerce or in the production of goods for commerce, and therefore was not entitled to the benefits of the Fair Labor

Standards Act; (2) he failed to prove his case by clear and definite evidence, and appellant was entitled to a peremptory instruction; (3) the instructions were prejudicially erroneous; and (4) all amounts claimed by appellee for wages prior to August 21, 1939, were barred by the Kentucky five year statute of limitations, and the court erred in submitting these amounts to the jury.

We have concluded that ground (1) must be sustained, and it is unnecessary therefore to consider the other grounds relied on for reversal. The appellant, Harlan-Wallins Coal Corporation, owns and operates a coal mine in Harlan county, and ships its coal in interstate commerce. It maintains for the use of its employees a bathhouse about 700 or 800 yards from the nearest mine entry. The use of the bathhouse is not compulsory, and only those employees who pay a fee of $1 a month, which is deducted from their wages, have the privilege of using it. The fees or dues paid by the employees are used to pay the salaries of the bathhouse keepers and the expense of maintaining the bathhouse. The appellee, Luther David, was employed in 1936 by W. H. Basham, appellant's superintendent, at a salary of $65 a month, to take charge of the bathhouse during the night shift. His duties consisted principally of maintaining fires for heating the bathhouse in cold weather and for heating the water at all times. He also was required to keep the house clean, and to report to the company the names of the miners who elected to use the bathhouse. His salary was increased to $75 a month in 1938 and to $85 a month in 1941. The proof shows that the bathhouse was maintained solely as a convenience to the appellant's employees who desired to use it after their day's work had been completed, and that fewer than one-half of the miners employed by appellant paid the monthly dues and availed themselves of the privilege. It may be that appellee's labor contributed in some degree to the comfort or convenience of the miners who were engaged in the production of goods for commerce, but it does not follow that he was engaged in commerce or in the production of goods for commerce within the meaning of those terms in the Fair Labor Standards Act. U. S. C. A. Title 29, section 206, provides: ''(a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—''

In construing this section of the Act, the courts have uniformly held that it is the nature of the work of the particular employee and not the nature of the employer's business which determines whether the employee is engaged in commerce or in the production of goods for commerce. Overstreet v. North Shore Corporation, 318 U. S. 125, 63 S. Ct. 494, 87 L. Ed. 656; Warren-Bradshaw Drilling Co. v. Hall, 317 U. S. 88, 63 S. Ct. 125, 87 L. Ed. 83; Lewis v. Florida Power & Light Co., 5 Cir., 154 F. 2d 751; E. C. Schroeder Co. v. Clifton 10 Cir., 153 F. 2d 385; Crabb v. Welden Bros., D. C., 65 F. Supp. 369. In McLeod v. Threlkeld, 319 U. S. 491, 63 S. Ct. 1248, 1251, 87 L. Ed. 1538, a cook employed to prepare and serve meals to railroad maintenance of way employees, who were engaged in interstate commerce, was held not engaged in such commerce within the meaning of the Fair Labor Standards Act. The court said:

"The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it. * * *

"It is not important whether the employer, in this case the contractor, is engaged in interstate commerce. It is the work of the employee which is decisive. Here the employee supplies the personal needs of the maintenance-of-way men. Food is consumed apart from their work. The furnishing of board seems to us as remote from commerce, in this instance, as in the cases where employees supply themselves. In one instance the food would be as necessary for the continuance of their labor as in the other."

Section 3(j) of the Act defines the term "produced," and then provides: "* * for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

In Kirschbaum v. Walling, 316 U. S. 517, 62 S. Ct. 1116, 1121, 86 L. Ed. 1638, it was held that the Act extended to employees engaged in the operation and main-

tenance of a loft building in which large quantities of goods for interstate commerce were produced by certain of its tenants, but in construing section 3(j) of the Act, the court said:

" 'Necessary' is colored by the context not only of the terms of this legislation but of its implications in the relation between state and national authority. We cannot, in construing the word 'necessary', escape an inquiry into the relationship of the particular employees to the production of goods for commerce. If the work of the employees has only the most tenuous relation to, and is not in any fitting sense 'necessary' to, the production, it is immaterial that their activities would be substantially the same if the employees worked directly for the producers of goods for commerce.

"* * * In our judgment, the work of the employees in these cases had such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation 'necessary to the production of goods for commerce.' "

The duties performed by appellee were neither indispensable nor necessary to the mining of coal, and did not have that "close and immediate tie with the process of production for commerce" which would bring him within the coverage of the Act. This is in conformity with our decision in Fultz v. United States Trust Co., 302 Ky. 493, 195 S. W. 2d 87.

The judgment is reversed for proceedings consistent herewith.