**LEWIS et al. v. FLORIDA POWER & LIGHT CO.**

Civil Action No. 854–M.

District Court, S. D. Florida, Miami Division.

Nov. 2, 1946.

Paul H. Brinson, of Coral Gables, Fla., and E. P. Ellis, of Miami Fla., for plaintiffs.

Loftin, Anderson, Scott, McCarthy & Preston, Robert H. Anderson, and Will M. Preston, all of Miami, Fla., for defendant.

AKERMAN, District Judge.

Newton M. Lewis, in behalf of himself and in behalf of six others who are similarly situated (hereafter referred to as plaintiffs), sued to recover from the Defendant compensation allegedly due for overtime work, together with liquidated damages, attorney's fees and Court costs, under the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The case has heretofore been before this Court and its judgment by Judge DeVane that "The defendant is neither engaged in 'commerce' or 'in the production of goods for commerce' and therefore the Fair Labor Standards Act does not extend to employees of the defendant" was reversed by the Circuit Court of Appeals for the Fifth Circuit. Lewis v. Florida Power & Light Co., 154 F.2d 751. The judgment of this Court and the reversal of the Circuit Court of Appeals left open for consideration and determination by this Court the two issues raised by the pleadings of the parties to the litigation, that is,

(1) Whether Plaintiffs were engaged in the production of goods for interstate commerce? and

(2) Whether Plaintiffs were employees of the Sheriff of Dade County, Florida, or the Defendant?

The case was tried to the Court without a jury. Two full days were required to complete the taking of testimony. The Court permitted the testimony to take a wide range in order that the Court might be fully advised as to all of the surrounding circumstances. The testimony of interested and disinterested witnesses was carefully weighed.

The Circuit Court of Appeals ruled that the Defendant was engaged in the production of goods for commerce. It left open for further consideration the aforesaid first question of whether Plaintiffs were engaged in the production of goods for interstate commerce. Plaintiffs, in guarding the Miami and Miami Beach electric generating plants of Defendant and in protecting Defendant's property and preventing sabotage and trespassing, were engaged in an occupation necessary in the production of goods for interstate commerce. It follows that the first issue is resolved in favor of Plaintiffs, however Plaintiffs' case fails because the answer to the second question is that the Plaintiffs were never employees of the Defendant, but at all times were the bona fide employees of the Sheriff of Dade County, Florida.

To secure a full picture of the case it was necessary to go back in our minds to the situation as it existed in June, 1941. Every intelligent man, who kept at all informed of public affairs, knew at that time that we were on the verge of the War. Some of us hoped it would be avoided, but it was hope against hope. We were all mindful of the sabotage and destruction which occurred at the beginning of World War I, and the people were excited. We saw that at every turn of the road and the War Department decided that it was necessary to have armed guards at plants (including those of the Defendant) which contributed to the preparation of war. No patriotic citizen at that time raised any question as to the authority of the United States Government to make such requirements. No patriotic citizen ever raised any question as to the validity of the regulations for the control of such commerce. The Defendant was among the first to put in armed guards. While the Defendant did start out to organize a guard of its own, it is practically undisputed that before such arrangement was carried out the other arrangement

with the Sheriff of Dade County, Florida, was entered into, and Plaintiffs and others were informed that the plan had been changed and that Plaintiffs would be employees of the Sheriff of Dade County, Florida. There are a good many elements that the Court should consider in determining whether an employee is an employee of another. The first is the contract of employment. Second, who has direction and control over the employee. Third, who actually pays the money, the wages or salary. But in the opinion of the Court, the most controlling factor is who has the power to hire or fire. While it is true that the Defendant furnished the money, the view is taken that Defendant was justified in incurring this extraordinary expense on the theory that if the plants were not protected, then, perhaps, the stockholders would not have anything. Because of that Defendant was justified in taking the stockholders' money in paying this extra expense. Under all the circumstances in this case the Plaintiffs were not employees of the Defendant. The Court makes the following:

### Findings of Fact

1. Defendant, a Florida corporation, engaged directly or indirectly in the manufacture or furnishing of electric power, energy or services which contributed to the prosecution of the war effort, operated electric generating plants at Miami and Miami Beach in connection with its aforesaid and other activities.

2. In accordance with the suggestions, insistence or regulations of the United States Government and its agencies or departments, Defendant required armed guard service to protect such plants against sabotage and other destruction, which armed guard service was furnished by armed guard employees of the Sheriff of Dade County, Florida.

3. Plaintiffs so guarded such plants as employees of the Sheriff of Dade County, Florida, and because of their activities Plaintiffs were engaged in an occupation necessary to the production of goods for interstate commerce.

4. The Defendant, through its representatives, entered into an arrangement with D. C. Coleman, the Sheriff of Dade County, Florida, to furnish armed guard service at such plants, which arrangement was continued until the United States Government, through its agencies or departments notified the Defendant that armed guards would no longer be required. Prior to the making of such arrangement and subsequent to its termination the Defendant did not have armed guards guarding the generating plants. In consummating and carrying out the arrangement no evasion or avoidance of the Fair Labor Standards Act was intended by Defendant, and no subterfuge was resorted to by Defendant. No collusive arrangement existed for such purposes, or either of them, between the Defendant and the Sheriff of Dade County, Florida. Defendant, with respect to all its employees, complied with the standards of such Act. The Defendant, in undertaking to comply with the requirements of the United States Government and its agencies or departments sought to have the armed guards provided by an outside agency and thereby divest itself of all control and responsibility for the presence of armed guards on its premises and the tortious consequences which might ensue.

5. Defendant did not employ Plaintiffs expressly or otherwise, nor suffer or permit them to work under circumstances where an obligation on the part of the Defendant to pay Plaintiffs was implied. Plaintiffs were at all times during the employment in question bona fide employees of the Sheriff of Dade County, Florida.

6. Plaintiffs were hired by the Sheriff of Dade County, Florida, and at the direction of the Sheriff of Dade County, Florida, and through the making of required statutory bonds and otherwise, became duly authorized special deputy sheriffs of the State of Florida. Premiums on these bonds were paid by the Sheriff of Dade County, Florida. Plaintiffs were fingerprinted by the Sheriff of Dade County, Florida.

7. Plaintiffs were discharged by the Sheriff of Dade County, Florida. For example, the Sheriff of Dade County, Florida, discharged one of the Plaintiffs in this case for being intoxicated while on the job and

another of the Plaintiffs for insubordination.

8. The Sheriff of Dade County, Florida, fixed the monthly wage of the Plaintiffs, which wage was fixed by the Sheriff of Dade County, Florida, at the same rate as other Deputy Sheriffs employed by the Sheriff of Dade County, Florida, as Highway Road Patrolmen.

9. The working conditions of Plaintiffs, including the hours of labor which were the same as the Sheriff's Highway Road Patrolmen, were determined and fixed by the Sheriff of Dade County, Florida.

10. Plaintiffs were under the direction, control and supervision of the Sheriff of Dade County, Florida, and his duly constituted official representatives with respect to their employment, hours of labor, place of assignment, working conditions and duties and (a) the designation by Defendant of the vital parts of the plants to be guarded; (b) advice through Defendant's plant superintendents and others as to persons to be admitted to such plants; and (c) the activities of one of the Sheriff's deputies who was on the payroll of the Defendant and who acted at all times and in all things for the Sheriff and under his specific instructions with respect to the guard service and not for the Defendant, and who never received any orders or instructions from the Defendant, did not shift the liability for payment of Plaintiffs' wages from their employer, the Sheriff of Dade County, Florida, to the Defendant, and did not make Plaintiffs the employees of Defendant.

11. Workmen's Compensation Insurance was carried with respect to Plaintiffs by the Sheriff of Dade County, Florida, with his own insurance carrier, and premiums thereon were paid by the Sheriff of Dade County, Florida.

12. Withholding taxes on the wages paid by the Sheriff of Dade County, Florida, to Plaintiffs were deducted from the wages of Plaintiffs by the Sheriff of Dade County, Florida, and Plaintiffs accepted from the office of the Sheriff of Dade County, Florida, their wages less such required governmental deductions.

13. At the suggestion of the military authorities of the United States Government, the Sheriff of Dade County, Florida, secured and provided uniforms for Plaintiffs. The Sheriff of Dade County, Florida, paid for such uniforms. Plaintiffs acknowledged receipt in writing of uniforms and other equipment, such as caps, cap badges, cap covers, bow ties, shirts and trousers from the Sheriff of Dade County, Florida, and over their signatures agreed that the equipment was to be "returned upon termination of employment to the Sheriff's Office."

14. Arms for the Plaintiffs were provided through the Sheriff of Dade County, Florida. Machine guns so provided were owned by the Sheriff. Shot guns so provided were owned by the Defendant. Side arms carried by any of the Plaintiffs were owned by them.

15. Plaintiffs signed payrolls in the office of the Sheriff of Dade County, Florida, and acknowledged receipt of wages paid to them by the Sheriff of Dade County, Florida.

16. Written instructions prepared by the Chief Deputy of the Criminal Division of the Sheriff's office and signed by the Sheriff of Dade County, Florida, were acknowledged in writing as having been received by Plaintiffs, which instructions carried the mandate over the signature of the Sheriff of Dade County, Florida, that "Failure to obey any of the above instructions will subject deputies to immediate dismissal."

17. The Sheriff of Dade County, Florida, in providing the guard service and in doing all things in connection therewith, did so independently and was not acting as an agent or employee of the Defendant. The furnishing of guard service by the Sheriff of Dade County, Florida, to the Defendant's Miami and Miami Beach plants was an official act of the Sheriff of Dade County, Florida, in his official capacity as an instrumentality of the State of Florida, and Plaintiffs were employees of the Sheriff of Dade County, Florida, and such Sheriff was the employer of Plaintiffs as an instrumentality of the State of Florida.

18. The Defendant reimbursed the Sheriff of Dade County, Florida, for the actual cost of the guard service, including wages, bond fees, insurance premiums, cost of uniforms and increased accounting costs paid by the Sheriff to a deputy sheriff bookkeeper of the Sheriff of Dade County, Florida.

19. That by Chapter 21798, Laws of Florida, Acts of 1943, F.S.A. § 30.29 and note, the furnishing of guard service such as that furnished by the Sheriff of Dade County, Florida, to the Defendant was authorized, ratified and confirmed, and employment of guards by the various Sheriffs of the counties of the State of Florida was decreed to be employment by such Sheriffs in their official capacities as an ·instrumentality of the State of Florida.

20. Agreements between the Plaintiffs and the United States of America recited that Plaintiffs' employer was D. C. Coleman, Sheriff of Dade County, Florida.

21. Applications of certain of Plaintiffs to the United States Coast Guard for Coast Guard identification passes recited that the employer was the Sheriff of Dade County, Florida.

22. When additional gasoline was required by Plaintiffs during rationing days, the office of the Sheriff of Dade County, Florida, made application therefor to the Office of Price Administration with respect to certain of Plaintiffs.

23. The Sheriff of Dade County, Florida, at all times considered Plaintiffs his employees. Plaintiffs at all times considered the Sheriff of Dade County, Florida, as their employer, and such is fully shown by the testimony and exhibits in this case, including the recital in the aforesaid agreements and applications that Plaintiffs' employer was the Sheriff of Dade County, Florida.

24. During the period of this employment as armed guards Plaintiffs always went to the office of the Sheriff of Dade County, Florida, to receive their compensation from the bookkeeper or other employee of the Sheriff of Dade County, Florida, and at no time during their employment by the Sheriff as armed guards made any demands on Defendant for their wages or alleged overtime compensation.

25. None of the Plaintiffs were in fact employed by the Defendant at any time during their purported employment as armed guards; at no time had the Defendant ever entered into any contractual arrangement, express or implied, with any of the Plaintiffs to enter Defendant's employ as armed guards or otherwise.

26. Defendant did not hire Plaintiffs or any of them.

27. Defendant did not discharge Plaintiffs or any of them.

28. Defendant did not determine the wages, hours of labor, working conditions, or places of assignment of Plaintiffs or any of them.

29. None of Plaintiffs, at any of the times while they were assigned by the Sheriff of Dade County, Florida, as armed guards at Defendant's Miami and Miami Beach plants,· were given instructions as to their duties or were supervised in any way by Defendant or any of Defendant's authorized employees, and the designation by Defendant of the vital parts of the plants to be guarded and advise as to who was a proper person to enter the plant property were not acts of control or supervision.

30. In written report made by Defendant's representative (who consummated the arrangement under which the Sheriff of Dade County, Florida, furnished guard service for the Defendant, and who is no longer connected with the Defendant) immediately after the consummation of the arrangement and several years before the institution of this litigation, it fully appears that the then Plaintiff guards were employed directly by the Sheriff and that the Defendant "are paying the Sheriff's office directly as an independent contractor for this watchman service."

31. Plaintiffs were not included in the Defendant's Workmen's Compensation records, including reports to the Florida Industrial Commission.

32. Plaintiffs were not included in reports made by the Defendant to the Florida Industrial Commission or to the United

States Government with respect to State or Federal Unemployment taxes.

33. Plaintiff were never included in Victory Tax or Federal Income Tax withholding reports made by Defendant to the United States Government.

34. Plaintiffs were never individually or collectively included in any applications made by Defendant to the Florida Wage Stabilization authorities with respect to increases in wages for its employees.

35. Plaintiffs were never included or mentioned in any Defendant designated employee job classification.

36. When union election was held in 1942 under jurisdiction of the National Labor Relations Board and with respect to Defendant's production, transmission and distribution employees, neither an armed guard or guard classification was included.

37. Applications filed with the National Labor Relations Board by Defendant did not include an employee classification of armed guard.

38. The labor organization representing employees of the Defendant in the production, transmission and distribution departments did not represent employees in a classification of armed guards and labor agreements between the Defendant and such labor organization does not include a classification for armed guards and the labor organization has never bargained collectively with Defendant for Plaintiffs.

39. Plaintiffs names have never been included in or appeared upon fifty two (52) "Forms Used In Connection With Florida Power & Light Company Employees," which forms include Time Record, Payroll Time Report, Payroll Check, Employee's Earnings Record and Payroll Summary (All employees' names, earnings and deduction data).

40. From Defendant's payroll and other records the Defendant has never treated or considered Plaintiffs or any of them as employees of Defendant.

41. Under the circumstances Plaintiffs could not have believed that they were employees of the Defendant. Plaintiffs and Defendant were not employees and employer under the Fair Labor Standards Act.

## Conclusions of Law

1. The Court has jurisdiction over the parties and of the subject matter involved herein. Section 17, Fair Labor Standards Act of 1938, Act of June 25, 1938, c. 676, 52 Stat. 1060, Title 29 U.S.C.A. § 201 et seq.

2. Plaintiffs were engaged in the production of goods for interstate commerce within the meaning of the Fair Labor Standards Act in performing armed guard service about the Miami and Miami Beach electric generating plants of Defendant at which plants production of goods for interstate commerce was carried on by Defendant.

3. In order for any action to be maintained under the provisions of Section 16(b) of the Fair Labor Standards Act of 1938, Plaintiffs must prove that they are "employees" of Defendant, as the term "employees" is defined in such Act. Plaintiffs have not, as a matter of law, upon the evidence in this case, established that they are "employees" of Defendant as defined in the Act. As a matter of law Defendant did not hire Plaintiffs expressly or otherwise, nor suffer or permit them to work under circumstances where an obligation to pay them was implied. As a matter of law Plaintiffs and Defendant were not employees and employer.

4. As a matter of law upon all the evidence in this case it has been proven by a preponderance of the evidence that Plaintiffs were at all times bona fide employees of the Sheriff of Dade County, Florida, who furnished guard service to the Defendant as an independent contractor and as an instrumentality of the State of Florida and not as an agent or employee of Defendant.

5. As a matter of law under the provisions of Chapter 21798, Laws of Florida, Acts of 1943, F.S.A. § 30.29 and note, Plaintiffs were in the employ of the Sheriff of Dade County, Florida, as an instrumentality of the State of Florida.

6. As a matter of law, Chapter 21798, Laws of Florida, Acts of 1943, F.S.A. § 30.29 and note, authorized and empowered the Sheriff of Dade County, Florida, to furnish guard service such as was furnished by him to the Defendant and all guards

theretofore employed by the Sheriff of Dade County were held to have been employed according to the terms and conditions of such Chapter, and the employment by the various Sheriffs in such connection was ratified, confirmed and held to be employment in their official capacities as an instrumentality of the State of Florida.

7. As a matter of law no evasion or avoidance of the Fair Labor Standards Act was intended by Defendant, and no subterfuge resorted to by Defendant and no collusive arrangements existed for such purposes or either of them between Defendant and the Sheriff of Dade County, Florida. .

8. As a matter of law upon the whole record Plaintiffs' action fails and they are entitled to no relief against Defendant.

Judgment will be entered in favor of the Defendant dismissing this cause on the merits as to all the Plaintiffs, and at the cost of Plaintiffs.