OVERSTREET ET AL. *v.* NORTH SHORE CORPORATION.

No. 284.   Argued January 11, 1943.—Decided February 1, 1943.

*Mr. Lucien H. Boggs* for petitioners.

By special leave of Court, *Assistant Attorney General Shea* argued the cause (*Solicitor General Fahy* and *Messrs. Irving J. Levy* and *Peter Seitz* were on the brief) for the Administrator of the Wage and Hour Division, U. S. Department of Labor, as *amicus curiae.*

*Mr. Roswell P. C. May,* with whom *Mr. W. Gregory Smith* was on the brief, for respondent.

*Mr. Harry J. Gerrity* filed a brief on behalf of the American Toll Bridge Association et al., as *amici curiae,* urging affirmance.

MR. JUSTICE MURPHY delivered the opinion of the Court.

This is another case in which we must define the scope of the Fair Labor Standards Act.[1]  52 Stat. 1060, 29 U. S. C. §§ 201 *et seq.*  The precise question is whether petitioners, who are engaged in maintaining or operating a toll road and a drawbridge over a navigable waterway which together constitute a medium for the interstate movement of goods and persons, are "engaged in commerce" within the meaning of §§ 6 and 7 of the Act.[2]

Petitioners, together with others not parties to this petition, brought this action against respondent and a subsidiary under § 16 (b) of the Act for the recovery of unpaid minimum wages, overtime compensation, and liquidated damages.  Respondent moved to dismiss as to all the plaintiffs, and the motion as to petitioners was

---

[1] Compare *Kirschbaum Co.* v. *Walling,* 316 U. S. 517; *Warren-Bradshaw Drilling Co.* v. *Hall,* 317 U. S. 88; *Walling* v. *Jacksonville Paper Co.,* 317 U. S. 564; *Higgins* v. *Carr Brothers Co.,* 317 U. S. 572.

[2] Section 3 (b) defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

granted by the district court, leave to amend being given to the other complainants who are not before us. 43 F. Supp. 445. Petitioners appealed to the Circuit Court of Appeals which affirmed the order of dismissal. 128 F. 2d 450. The important question raised as to the coverage of the Act caused us to grant certiorari.

The relevant facts alleged in the complaint as amended, which are to be taken as true for purposes of the motion to dismiss, may be summarized as follows:

Respondent owns and operates a toll road and a drawbridge which is part of the road. The toll road connects United States Highway No. 17, an interstate arterial Highway, with Fort George Island, which lies off the northern coast of Florida, being separated from the mainland by the Intercoastal Waterway. The toll road crosses the Waterway at Sisters' Creek by means of the drawbridge, which must be raised frequently to permit the passage of boats engaged in interstate commerce. The toll road constitutes an integral part of the highway system of the United States and provides the only means of land communication between Fort George Island and the Florida mainland. It is used extensively by persons and vehicles traveling between the island and points outside Florida in interstate commerce. Mail to and from other States, as well as goods produced outside Florida and consigned to merchants on the island, are transported over the toll road. Each of the petitioners was employed by respondent in connection with the operation of the toll road and drawbridge. Overstreet operated the drawbridge, raising it for the passage of boats through Sisters' Creek and lowering it for the resumption of traffic over the road; Brazle was engaged in maintenance and repair work on the road and the bridge; and Garvin sold and collected toll tickets from "vehicles using said toll road in interstate commerce." Petitioners received neither the

minimum wages nor the overtime compensation prescribed by §§ 6 and 7 of the Act.

We think these allegations bring petitioners within the coverage of the Act and entitle them to recover if proved.

Our starting point is respondent's concession that no question of constitutional power is involved, but only the ascertainment of Congressional intent, that is, did Congress mean to include employees such as petitioners within the Act. In arriving at that intent it must be remembered that Congress did not choose to exert its power to the full by regulating industries and occupations which affect interstate commerce. See *Kirschbaum Co.* v. *Walling,* 316 U. S. 517, 522–23; *Walling* v. *Jacksonville Paper Co.,* 317 U. S. 564. Respondent contends that petitioners are in this category, that their activities are local and at most only affect commerce. But the policy of Congressional abnegation with respect to occupations affecting commerce is no reason for narrowly circumscribing the phrase "engaged in commerce." We said in the *Jacksonville Paper Co.* case, *supra,* "It is clear that the purpose of the Act was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce." And in determining what constitutes "commerce" or "engaged in commerce" we are guided by practical considerations. *Jacksonville Paper Co.* case, *supra,* and see also *Shanks* v. *Delaware, L. & W. R. Co.,* 239 U. S. 556, 558, dealing with what will shortly be pointed out as a similar question in the coverage of the Federal Employers' Liability Act.

A practical test of what "engaged in interstate commerce" means has been evolved in cases arising under the Federal Employers' Liability Act (45 U. S. C. §§ 51 *et seq.*) which, before the 1939 amendment (see 53 Stat. 1404), applied only where injury was suffered while the carrier was engaging in interstate or foreign commerce and

the injured employee was employed by the carrier "in such commerce." 35 Stat. 65. In determining the reach of that phrase, the case of *Pedersen* v. *Delaware, L. & W. R. Co.*, 229 U. S. 146, held that an employee who was injured while carrying bolts to be used in repairing a railroad bridge over which interstate trains passed was engaged in interstate commerce within the meaning of the Liability Act. It was pointed out that tracks and bridges were indispensable to interstate commerce and "that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it." *Id.* at p. 151. See also *Philadelphia, B. & W. R. Co.* v. *Smith*, 250 U. S. 101; *Southern Ry. Co.* v. *Puckett*, 244 U. S. 571; *New York Cent. R. Co.* v. *Porter*, 249 U. S. 168; *Kinzell* v. *Chicago, M. & St. P. Ry. Co.*, 250 U. S. 130; *Southern Pacific Co.* v. *Industrial Accident Comm'n*, 251 U. S. 259; *Philadelphia & Reading Ry. Co.* v. *Di Donato*, 256 U. S. 327; *Rader* v. *Baltimore & Ohio R. Co.*, 108 F. 2d 980. Compare *Shanks* v. *Delaware, L. & W. R. Co.*, 239 U. S. 556; *Chicago & North Western Ry. Co.* v. *Bolle*, 284 U. S. 74; *Chicago & Eastern Illinois R. Co.* v. *Commission*, 284 U. S. 296.

We think that practical test should govern here.[3] Vehicular roads and bridges are as indispensable to the interstate movement of persons and goods as railroad tracks and bridges are to interstate transportation by rail. If they are used by persons and goods passing between the various States, they are instrumentalities of interstate

---

[3] This has been the administrative interpretation. See Interpretative Bulletin No. 5 of the Wage and Hour Division of the Department of Labor, issued in November, 1939, at p. 7. This is set forth in the 1941 Edition of the Wage and Hour Manual at p. 34. See also p. 54.

Compare the dissenting opinion in *Pedersen* v. *Fitzgerald Construction Co.*, 262 App. Div. 665, 668, 30 N. Y. S. 2d 989, affirmed without opinion, 288 N. Y. 211, 687, 43 N. E. 2d 83.

commerce. Cf. *Covington & Cincinnati Bridge Co.* v. *Kentucky,* 154 U. S. 204, 218. Those persons who are engaged in maintaining and repairing such facilities should be considered as "engaged in commerce" even as was the bolt-carrying employee in the *Pedersen* case, *supra,* because without their services these instrumentalities would not be open to the passage of goods and persons across state lines. And the same is true of operational employees whose work is just as closely related to the interstate movement. Of course, all this is subject to the qualification that the Act does not consider as an employer the United States or any State or political subdivision of a State, and hence does not apply to their employees. § 3 (d).

The allegations of petitioners' complaint satisfy this practical test. The road and bridge allegedly afford passage to an extensive movement of goods and persons between Florida and other States, and moreover the drawbridge presents an obstacle to interstate traffic by water over the Intercoastal Waterway if not properly operated. The operational and maintenance activities of petitioners are vital to the proper functioning of these structures as instrumentalities of interstate commerce. The services of Overstreet are necessary to prevent the drawbridge from being either a barrier to interstate navigation or else a gap in the vehicular way. Without the services of Brazle the facilities would fall into disrepair, and both operation and maintenance would seem to depend upon Garvin's collecting the toll from users of the structures. The work of each petitioner in providing a means of interstate transportation and communication is so intimately related to interstate commerce "as to be in practice and in legal contemplation a part of it" (*Pedersen's* case, *supra*) and justifies regarding petitioners as "engaged in commerce" within the meaning of the Fair Labor Standards Act.

Respondent resists the application of the test of the *Pedersen* and related cases, cited above, pointing out that there may be pitfalls in translating implications from the special aspects of one statute to another (see *Federal Trade Comm'n* v. *Bunte Bros.*, 312 U. S. 349, 353), and claiming that significant differences exist between the Federal Employers' Liability Act and the Fair Labor Standards Act. The outstanding difference asserted is that a railroad company is actually engaged in commerce as a carrier of goods and persons, and since it is difficult to consider the business other than as a whole and to separate maintenance from transportation employees, there is good reason for treating maintenance employees as engaged in commerce. (Compare the *Pedersen* case, *supra,* at pp. 151-152.) As regards itself respondent says that it is not engaged in commerce, but only in providing facilities which those carrying on commerce may use, and therefore there is no sound basis for treating its maintenance and operational employees as engaged in commerce— rather they only affect commerce. Reliance is placed upon *Henderson Bridge Co.* v. *Kentucky,* 166 U. S. 150, and *Detroit Bridge Co.* v. *Tax Board,* 294 U. S. 83, where in sustaining the power of the States of Kentucky and Michigan, respectively, to tax the franchise of domestic corporations operating bridges between Kentucky and Indiana and between Michigan and Canada, it was said that the respective bridge companies were not engaged in interstate or foreign commerce. We do not regard these objections as well taken.

The Federal Employers' Liability Act and the Fair Labor Standards Act are not strictly analogous, but they are similar. Both are aimed at protecting commerce from injury through adjustment of the master-servant relationship, the one by liberalizing the common law rules pertaining to negligence and the other by eliminating substandard working conditions. We see no persuasive rea-

son why the scope of employed or engaged "in commerce" laid down in the *Pedersen* and related cases, cited above, should not be applied to the similar language in the Fair Labor Standards Act, especially when Congress in adopting the phrase "engaged in commerce" had those Federal Employers' Liability Act cases brought to its attention.[4]

The *Henderson* and *Detroit* bridge cases, *supra,* do not affect our conclusion. We have pointed out that decisions such as those, dealing with various assertions of state or federal power in the commerce field, are not particularly helpful in determining the scope of the Act. *Kirschbaum Co.* v. *Walling, supra,* pp. 520–21; *Walling* v. *Jacksonville Paper Co., supra.* But even if we accept the premise of the *Bridge* cases and regard respondent as not engaged in commerce, the result is not changed. The nature of the employer's business is not determinative, because as we have repeatedly said, the application of the Act depends upon the character of the employees' activities. *Kirschbaum Co.* v. *Walling, supra,* p. 524; *Warren-Bradshaw Drilling Co.* v. *Hall,* 317 U. S. 88; *Walling* v. *Jacksonville Paper Co., supra.* The fact that respondent may be subject to state taxation does not imply that it is free from federal regulation or that its road and drawbridge are not instrumentalities of interstate commerce. Petitioners, who are engaged in operating and maintaining respondent's facilities so that there may be interstate passage of persons and goods over them, are so closely related to that interstate movement as a practical matter that we think they must be regarded, under the allegations of their complaint, as "engaged in commerce" within the meaning of §§ 6 and 7 of the Act.

---

[4] See 83 Cong. Rec., 75th Cong., 3d Sess., Pt. 7, p. 7434, and Pt. 8, pp. 9168–71. See also Joint Hearings before the Senate Committee on Education and Labor and the House Committee on Labor on S. 2475 and H. R. 7200, 75th Cong., 1st Sess. (1937), Pt. 1, pp. 42–43.

We conclude that petitioners' complaint was erroneously dismissed. Accordingly, the judgment below is reversed and the cause remanded to the district court for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE ROBERTS and MR. JUSTICE JACKSON dissent.