**ROUCH v. CONTINENTAL OIL CO.**

No. 2154.

District Court, D. Kansas.

April 3, 1944.

E. M. Knight, of Arkansas City, Kan., for plaintiff.

A. L. Hull, of Ponca City, Okl., and Albert Faulconer (of Faulconer, Dale & Hickman), of Arkansas City, Kan., for defendant.

CHANDLER, District Judge.

John Rouch brought this action against the Continental Oil Company, a corporation, seeking to recover as an employee

for overtime compensation, liquidated damages and reasonable attorneys' fees under the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219.

Plaintiff alleges in his petition that the defendant, during all of his employment, was engaged in commerce and in producing, refining and selling crude oil and its by-products for commerce. That, incident to said business and as an integral part thereof, the defendant maintained and operated an airport near Ponca City, Oklahoma, for the purpose of selling, marketing and advertising its refined products and for housing, servicing and repairing airplanes for the United States Army, the United States Navy, the Government of Great Britain, the Braniff Airlines, planes of private owners, and planes owned by the defendant and operated in interstate commerce. He further alleges that his employment was subject to and within the purview of Section 7 of the Act, and that he was not paid for the hours he worked in excess of the maximum hours prescribed in the Act, and by reason thereof is entitled to recover as prayed for in his petition.

The defendant admits in its answer that it is engaged in producing, refining and selling crude oil and by-products thereof; that it operates the Municipal Airport at Ponca City, Oklahoma, under a contract with said City; and that at said airport it sells aviation gasoline and oils. It states that it sells the same at retail only to the general public and that it performs for such purchasers necessary services incidental to the delivery of such commodities for use by such purchasers, including the operation of hangars for housing such planes. It alleges that no goods are produced at such location; that plaintiff was employed during the times involved in the controversy "as an employee engaged in the operation by the defendant of a retail and/or service establishment, the greater part of whose selling and servicing is in intrastate commerce"; and that, during the times involved, the plaintiff "was not engaged in commerce, nor in the production of goods for commerce, and was not within the coverage of the Fair Labor Standards Act of 1938."

Under the issues thus joined, and the evidence introduced, together with stipulations entered into during the trial, the contentions of the parties are narrowed down to the following propositions:

(1) Was the plaintiff engaged in interstate commerce during such employment within the purview of the Fair Labor Standards Act of 1938?

(2) Was the plaintiff engaged in the production of goods for commerce during such employment within the purview of the Act?

(3) Was the plaintiff exempt from the provisions of the Act in the performance of his duties at the Ponca City Airport?

The defendant was engaged in interstate commerce. The City of Ponca City leased the Ponca City Airport to the defendant "for the purpose of operating and maintaining the airplane hangar of the second party (the defendant) heretofore erected by it thereon, and such other hangars as it may elect to build and operate * * * together with the right of ingress and egress thereto and therefrom * * *."

Defendant had "the right to regulate the use of said runways by aircraft using said municipal airport in accordance with the rules and regulations of the Civil Aeronautics Authority, with the right * * * to charge and collect for its own account usual and customary fees for such use." It agreed to "maintain twenty-four (24) hour service for the purpose of regulating, lighting, and supervising the landing and taking off of airplanes; also to keep the weeds and grass cut and render the mechanical service applicable to an airport of like classification in accordance with Civil Aeronautics Authority regulations." It also agreed to "maintain such improvements in a manner creditable to the City of Ponca City, and in conjunction with First Party (the City) will seek at all times to operate said airport in a manner conducive to bringing more air travel to Ponca City."

The evidence disclosed that the airport was a class 3 airport and that the defendant had been, and was, maintaining a fleet of three planes used in its general business of producing, refining and selling crude oil and the by-products thereof. These planes were used by the officials of the defendant company who were in charge of production and refining, the president of the company, the engineering department, and the legal department. They were housed, fueled, and serviced at the Ponca City Airport and transported these officials to and from various refineries of defendant located in several other states. The airport was used by

Braniff Airlines' transcontinental passenger planes which were engaged in general interstate transportation. Other planes which were making interstate flights were often fueled and serviced at this airport. However, the great majority of the planes making use of the airport were engaged in intrastate flights.

The evidence further disclosed that it was the duty of the plaintiff in his employment to keep the runways clear for the landing and taking off of planes; to make out clearances; and to see that no plane took off before daylight in the morning unless it had authority from the C.A.A. communication station and had two-way radio communication, landing lights and navigation lights. He was the only employee at the airport from 6 o'clock until 8 o'clock in the morning and was in charge of the hangar during this time. He kept the grass mowed on the landing field, filled any holes in the field with dirt or chat, and was in charge of the maintenance of all lights used at the field. He filled the planes with oil and gasoline and checked the oil and gasoline. He pulled airplanes in and out of the hangars, pulled the propellers to start them, kept the public away from them, and kept the runways clear when planes were coming in or departing.

The planes of the defendant company were in use about seventy or eighty per cent of the time. Plaintiff kept the runways clear when they were coming in and departing, helped fill them with oil and gas, helped the mechanics maintain them, helped push them into and out of the hangars, and cleaned the cabins, windows and windshields.

The airport manager testified that plaintiff was a necessary employee for the purpose of servicing the airplanes of the company when the planes went out and of carrying on the general work of operating the airport and servicing planes on Sunday—"he was looking after the operation of the airport. Mr. Rouch's duties were to take care of the field in the daytime." He was "a field attendant to help take care of the maintenance of the hangars and the airport property."

The foregoing facts bring this case within the rule that persons who are engaged in operating and maintaining facilities so that there may be interstate passage of persons and goods over them are so closely related to that interstate movement as a practical matter that they are "engaged in commerce" within the meaning of the Act. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656. It is not necessary, however, to go so far. The plaintiff was performing services upon airplanes while in interstate flight. He kept the runways clear while the planes were landing and taking off and pushed them in and out of hangars. These services were integral functions of interstate flight and fully as necessary as those performed by the pilots of the planes.

Since the first question has been answered in the affirmative, it is unnecessary for the decision of this case to answer the second question.

The third question must be answered in the negative. The defendant contends that plaintiff is not within the coverage of the Act by reason of Section 13 (a) (2) of the Act, being 29 U.S.C.A. § 213(a) (2), providing that the provisions of Sections 206 and 207 shall not apply with respect to any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce. The burden is upon the defendant to establish the exemption as being both within the spirit and letter of the statute. The section of the statute granting the exemption must be strictly construed against the defendant. Helena Glendale Ferry Co. v. Walling, 8 Cir., 132 F.2d 616. The operation of the establishment for the sale of its products by the defendant was merely incidental to the operation of the airport.

The defendant contends that plaintiff worked both in intrastate and interstate commerce, and that he has the burden of proving how much time he was employed in interstate commerce. This proof is not necessary. The evidence showed that a regular substantial part of his work was in interstate commerce. Fleming v. Jacksonville Paper Co., 5 Cir., 128 F.2d 395, Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460.

The plaintiff worked fifty-two hours per week. He is entitled to recover as provided in the Act for time worked within three years prior to the filing of this action.

The attorneys are directed to prepare findings of fact, conclusions of law, and judgment in accordance with this opinion.