## ATLANTIC CO. v. WEAVER et al.

### No. 5360.

Circuit Court of Appeals, Fourth Circuit.

July 24, 1945.

William K. Meadow, of Atlanta, Ga. (Spalding, Sibley & Troutman, of Atlanta, Ga., Joseph R. Moss, of York, S. C., and John T. Roddey, of Rock Hill, S. C., on the brief), for appellant.

Paul M. Hemphill and John M. Hemphill, both of Chester, S. C. (Julian L. Johnson, of Columbia, S. C., on the brief), for appellees.

Before PARKER, SOPER and NORTH-COTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

The appellees, Johnny Weaver, Charlie Hardin, B. Butler, R. N. Brown and Roosevelt Hall, herein referred to as the plaintiffs, brought suit in the District Court of the United States for the Western District of South Carolina against the appellant, Atlantic Company, a corporation, herein referred to as the defendant, seeking to recover alleged unpaid minimum wages and unpaid overtime compensation, liquidated damages, and attorney's fees under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(b).

A trial was had before the Judge without jury at Spartanburg, South Carolina, in June, 1944. In November, 1944, the judge below filed his findings of fact and conclusions of law and filed an order for judgment in favor of the plaintiffs herein against the defendant, Atlantic Company, as follows:

"Robert N. Brown.............. $5,066.90
Johnny Weaver .............. 2,082.26
Charlie Hardin .............. 3,194.86
Roosevelt Hall .............. 1,127.00
Belinda Butler ·.............. 3,509.44
and also the sum of $1,000 attorney's fee, and the unpaid costs in the case having been taxed in the sum of $33.20."

From this action of the court below this appeal was brought.

The defendant is a Georgia corporation operating a number of plants in the States of Virginia, North Carolina, Georgia, Alabama, South Carolina, Florida and Tennessee. It owns and operates some eighty to eighty-five plants in said States. Between October, 1938, and April, 1942, it was, among other activities, operating five breweries located at Charlotte, North Carolina, Norfolk, Virginia, Orlando, Florida, Atlanta, Georgia, and Chattanooga, Tennessee. All of its plants were under the supervision of the Atlanta office which compiled and computed all of the records of the company's business throughout the territory where it operated.

One of defendant's plants, known as plant number 64, was located at Chester, South Carolina. The Chester branch consisted of two separate and distinct plants under the supervision and control of one local manager.

The plaintiffs allege that for a certain period of time beginning October 24, 1938, they were employed by the defendant and worked in the Chester plant and that they worked hours in excess of the maximum prescribed by the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and were paid a less wage than the minimum prescribed in said Act.

At the close of plaintiffs' evidence the defendant moved for judgment in its favor, which motion was denied. At the conclusion of all of the evidence defendant again moved for judgment in its favor, which motion was taken under advisement by the court.

The findings of fact of the judge below are extensive and in minute detail. They may be summarized as follows:

That the extensive operations of the defendant company were all controlled from the Atlanta office; that the Chester, South Carolina, plant, where the plaintiffs worked, was engaged in the distribution of defendant's beer and ale, the beer deliveries to the Chester plant were made by an independent contractor from the brewery of the defendant at Charlotte, North Carolina, the beer being hauled in large beer trucks; that these trucks arrived at the Chester plant every week and sometimes twice a week; that whenever the trucks arrived at the Chester plant the five plaintiffs were called upon to help unload the truck and reload them with the empty beer cases and bottles.

The judge below further found that at the Chester plant was located a cold storage plant continuously operated for hire and for use by the public, and regularly used, among other customers, by agents of packing plants outside the State and also by other beer and yeast companies; that there was also a storage room for ice manufactured at Chester Plant No. 2; that in addition to the beer and ale business, the ice business and the cold storage business, the company carried on the business of selling refrigerators, and, the construction, placing and maintenance of signs and symbols advertising its products, principally its beer and ale; and that all of the plaintiff-employees were "indiscriminately required to, and did, regularly and constantly, perform services essential to the carrying on of all the various kinds of defendant's businesses".

That the entire process, involved in defendant's beer business, "including manufacture, transportation, temporary unloading, distribution at wholesale and collection of the purchase price, and the return of the empty bottles to the Charlotte brewery was one constant, continuous integrated action, at all times under the supervision and control of the Home Office in Atlanta. The payroll checks for payment of wages to its local employees were drawn by Atlanta and sent to Chester". That the various kinds of business carried on by the defendant at its Chester plant were both interstate and intrastate in nature, with the plaintiff-employees required continuously to "switch from job to job at the order and direction of defendant";

that the defendant was regularly, continuously and substantially engaged in the icing and re-icing of refrigerator cars, engaged in interstate commerce; that every day in the year, except Sunday, during the period here involved, the defendant sold and delivered from its Chester branch to the C. & N. W. Railway the ice used by it on its passenger trains and that the Chester plant regularly sold and delivered to the Southern Railway ice for use on its passenger trains engaged in interstate commerce, and for the use of its office employees, likewise engaged in interstate commerce; that ice was regularly and continuously sold to the Seaboard Air Line Railway in blocks, wholesale, for the use of its passenger trains engaged in interstate commerce; and that ice was likewise sold and distributed locally in and about Chester.

With regard to the labor performed by the plaintiffs, while employees of the defendant company, the judge below found that each and all of them were at various times called upon to perform and that they did perform work in interstate commerce within the meaning of the Act; that the amount of work performed in interstate commerce by each employee was a substantial part of the work that he did; that the defendant company kept no record of any kind of the hours worked by any one of the plaintiffs nor did the defendant keep any accurate record to show the number of hours of a work-day any one of the plaintiff-employees was working at any particular kind of the various businesses being carried on at the Chester plants; and that "no dependence can be put in the accuracy of the allocations shown by defendant's records".

The judge below concluded his findings of fact as follows:

"It appears by the greater weight of the evidence that each of the five plaintiffs regularly worked on interstate, as well as intrastate, business; that there was no separation by defendant of that part of its business subject to the Act, from that part of its business not subject to the Act, but that to a large extent the two classes of business were commingled in defendant's operations and defendant made no attempt to distinguish between the two when making payment of wages to these plaintiffs.

"The defendant has shown no facts which would justify the conclusion that any one

or more of the plaintiff-employees is an employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of 49 U.S.C.A. § 304."

In his conclusions of law, the judge below found that each of the five plaintiffs was at all times during his period of employment engaged in commerce and in the production of goods for commerce, within the meaning of the Act; that the defendant had failed to establish that any one of the five plaintiffs came within the exemption covered by Section 304, Title 49 U.S.C.A. and that the claimed exemption made by defendant pursuant to the provisions of 213(b) (1) did not apply to any of the plaintiffs; that under the facts in the case there was no justification for the contention of the defendant that the de minimis maxim was applicable to the work performed by any one of the plaintiffs and that the labors performed by each and all of the plaintiffs during their respective period of employment came within the coverage of both Sections 6 and 7 of the Act. 29 U.S.C.A. §§ 206 and 207.

The judge finally held as a conclusion of law that there was a failure on the part of the defendant to pay to any one of the plaintiffs wages at not less than the minimum fixed by the Act.

The judge below then went on to discuss the amount of time worked by each of the plaintiffs and made a computation of the amount due each as is above set out.

■ It is a well-settled principle of law that the test of coverage under the Act is the relation of the activities of the individual employee to interstate commerce or the production of goods for commerce rather than the nature of the employer's business. Here the nature of the employer's business as a whole presents a picture of interstate commerce. In McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538, it was held by the Supreme Court:

"* * * The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employer's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it. * * *

"It is not important whether the employer, in this case the contractor, is engaged in interstate commerce. It is the work of the employee which is decisive."

In the headnote to the above case it is stated: "The work of the employee decides this question; it is not important in this case whether his employer was engaged in interstate commerce."

See, also, Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656.

■ The sole question involved in this appeal is whether or not the plaintiffs are so connected with the interstate commerce part of defendant's business as to be covered by the Act. The judge below has found as a fact that the plaintiffs were so engaged. The findings of the judge below are binding upon us unless we can say that they are clearly wrong. Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

■ The judge in his findings of fact has also found that the plaintiffs did not come under the exception to the coverage of the Act as stated in the provisions of the Act exempting from its operation employees with respect to whom the interstate commerce commission has power to establish hours of service. We cannot say that the findings of fact of the judge below were clearly wrong on these or any other points decided by him.

■ Great reliance is placed by the defendant upon the doctrine of de minimis and it is strongly urged that this doctrine should be applied because the amount of work performed by the plaintiffs, in relation to interstate commerce, was such a small portion of their work time as to exclude them from the coverage of the Act. The judge below has specifically found against this contention, finding that the amount of labor performed by the plaintiffs with relation to the interstate commerce business of the defendant was a substantial part of their labor. Again, we cannot say that in this finding the judge was clearly wrong.

While there is some conflict in the authorities on the principles here involved, we think that the recent decision of the United States Supreme Court in the case of Phillips v. Walling, Adm'r, 323 U.S. ——, 65 S.Ct. 807, 808, is controlling. The

facts in that case are similar to the facts shown here, there the court said:

"The Fair Labor Standards Act was designed 'to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' Message of the President to Congress, May 24, 1934. Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress.

" * * * The prime function of petitioner's chain store system is to sell groceries at retail. Like most large chains, however, petitioner has found it economically feasible to perform and integrate both the retail and wholesale functions of the grocery business.

" * * * A warehouse and central office such as petitioner maintains are vital factors in this integration of the retail and wholesale functions. They are necessary instruments for the successful performance of the wholesale aspects of a multifunction business of this type."

Giving to the findings of the judge below the weight to which they are entitled, we are of the opinion that the judgment was correct and it is accordingly affirmed.

Affirmed.