**LESSER v. SERTNER'S, Inc., et al.**
Civ. 30–90.

District Court, S. D. New York.
June 10, 1947.

Max R. Simon, of New York City, for plaintiff.

Michael M· Platzman, of New York City (Benedict Ginsberg and Michael M. Platzman, both of New York City, on the brief), for defendants.

LEIBELL, District Judge.

This is a suit for overtime compensation under § 7 of the Fair Labor Standards Act, 29 U.S.C.A. § 207. The defendant is engaged in the business of cleaning, processing, renovating and repairing upholstered furniture, draperies, curtains, rugs and carpets and did a gross business of between $120,000 and $130,000 a year in 1941 to 1943 inclusive. Plaintiff was a receiving and shipping clerk. He physically handled sorted, routed, recorded, wrapped and labeled the merchandise and assisted in loading and unloading trucks. For a time he

also helped clean furniture both at defendant's loft and at the place of business of customers. Defendant had about twenty employees.

The Findings of Fact, which are being filed herewith, describe in detail the nature and extent of defendant's business and the type of work performed by plaintiff as an employee. The Conclusions of Law dismiss the special defenses of the defendant, claiming exemption under § 13(a) (2) of the Act 29 U.S.C.A. § 213(a) (2), and award judgment to the plaintiff for overtime compensation, plus liquidated damages and a reasonable attorney's fee. § 7.

■ The calculation of the overtime compensation due to the plaintiff under § 7 of the Act, 29 U.S.C.A. § 207, is made in Finding of Fact Nos. 34 to 58. Since the evidence clearly established lack of good faith on the part of the defendant, a deliberate violation of the Act, an allowance of 100% liquidated damages is proper. § 16(b), as amended May 14, 1947, by the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 216(b). The attorney's fee allowed is about 20% of the recovery, in a case involving numerous issues.

■ The applicability of the provisions of the Fair Labor Standards Act with respect to minimum wages and maximum hours set forth in §§ 6 and 7 of the Act, 29 U.S.C.A. §§ 206, 207, rests upon the character of the work performed by the employee. If he is engaged in commerce or in the production of goods for commerce he is covered by the Act. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656. If only part of an employer's business is in interstate commerce or in the production of goods for commerce, the character and relation of the employee's work as to that part of the employer's business is considered in deciding whether the employee is entitled to be benefits of §§ 6 and 7 of the Act. That is the clear import of the language in Skidmore v. John J. Casale Co., 2 Cir., 1947, 160 F.2d 527, 530, where the court said: " * * * it would appear that while a minimal amount of production for shipment interstate will suffice for the purpose of classifying the employer, nevertheless it must be shown that the work of the individual employee which relates to that minimal amount forms a substantial amount of all the work done by that employee."

■ Although the cleaning of rugs, draperies and furniture for an ultimate consumer who is a householder using them in his home, would not be classed as the production of goods for commerce, in view of Phillips v. Star Overall Dry Cleaning Laundry Co., 2 Cir., 149 F.2d 416, and Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383, nevertheless such services when performed for furniture dealers and trade shops, who resell the cleaned merchandise in interstate commerce, would be classed as the production of goods for commerce. About ½% of defendant's business was work done for furniture dealers and about ⅔% was for trade shops. About 8% of defendant's business is performed for decorators who are billed directly and who sell the article cleaned to others or use it for display. All of that work passed through plaintiff's hands as the receiving and shipping clerk.

Window cleaners and painters employed to work in a loft building have been held to be engaged in the production of goods for commerce, where the tenants of the loft building are so engaged. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. (Martino v. Michigan Window Cleaning Co., 327 U.S. 173, 66 S.Ct. 379, 90 L.Ed. 603). There would seem to be the same basis for a ruling that those who clean and renovate the furnishings of department stores or commercial concerns engaged in handling and selling goods in interstate commerce should be similarly classified. The fact that an outside company, such as the defendant, and not the department store or the commercial business hires the employees rendering such services, would not prevent the application of the rule. Fleming v. Arsenal Building Corp., 2 Cir., 125 F.2d 278 and Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383. About ½% of defendant's business was done on the furnishings and equipment of department stores; and about 7% for commercial consumers such as hotels, banks, restaurants and others.

In the Roland Electrical Co. case Mr. Justice Burton discussed the definition of "commerce", "goods" and "produced" as contained in § 3 of the Act, 29 U.S.C.A. § 203, and stated, 326 U.S. at pages 663 and 664, 66 S.Ct. at page 416, 90 L.Ed. 383: "This does *not* require the employee to be directly 'engaged in commerce' among the several states. This does *not* require the employee to be employed even in the production of an article which *itself* becomes the subject of commerce or transportation among the several states. It is enough that the employee be employed, for example, in an occupation which is necessary to the production of a part of any other 'articles or subjects of commerce of any character' which are produced for trade, commerce or transportation among the several states. This does *not* require an employee to be employed exclusively in the specified occupation. This does *not* require that the occupation in which he is employed be *indispensable* to the production under consideration. It is enough that his occupation be *'necessary to the production.'* There may be alternative occupations that could be substituted for it but it is enough that the one at issue is needed in such production and would, if omitted, handicap the production."

■ The plaintiff herein, as one of the defendant's employees, was engaged in performing services that were so closely related to the movement of commerce as to be a part thereof. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460. His duties in relation to the shipping of rugs in interstate commerce required several hours of his working time each day, a substantial part of all the work performed by the plaintiff. All of the rugs which defendant received at its place of business for cleaning were in turn picked up by the Lincoln Rug Co. of Newark, New Jersey, and transported to Newark, where the actual work of cleaning was performed by the Lincoln Co., as a subcontractor of the defendant. Plaintiff, in addition to receiving the rugs from defendant's trucks at defendant's place of business, after they had been picked up from customers, tagged, made a record thereof, and arranged the rugs so that they could be picked up by Lincoln Rug Co.'s trucks. He also assisted in loading the rugs on to the Lincoln Rug Co. truck and in unloading them when they were returned to the defendant by the Lincoln Co., after they had been cleaned.

■ Rugs shipped by a cleaning establishment in New York to a subcontractor in New Jersey to be cleaned and returned, are goods in interstate commerce. §§ 3(b) and 3(j) of the Act. Phillips v. Star Overall Dry Cleaning Laundry Co., supra. An employee of a New York corporation, a substantial part of whose services are regularly and directly related to recording and assembling the rugs, wrapping and tagging them, and assisting in loading them on to the New Jersey corporation's truck which transported the rugs to the New Jersey cleaning plant, is engaged in commerce and is covered by the maximum hours provision of the Fair Labor Standards Act· §§ 3 and 7, 29 U.S.C.A. §§ 203 and 207.

If an employee is engaged in "commerce or in the production of goods for commerce" under §§ 6 and 7 of the Act then the provisions thereof are applicable to him unless there exists an exemption under § 13 of the Act which withdraws him from the scope of the Act. The defendant asserts as a special defense that § 13(a) (2) of the Fair Labor Standards Act provides an exemption which makes Section 7 inapplicable to the plaintiff herein.

Section 13(a) (2) of the Act, 29 U.S.C.A. § 213(a) (2), provides: "The provisions of sections 206 and 207 of this title shall not apply with respect to * * * (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce; * * *."

The greater part of the defendant's business is furnishing services. That alone, however, does not bring defendant's employee, the plaintiff, within the exemption. A definition and explanation of the term "service establishment" is set forth in Interpretative Bulletin No. 6 issued by the Wage and Hour Division of the Department of Labor, June 1941, in Paragraphs 22 and 23 thereof:

"22. The term 'service establishment' as used in section 13(a) (2) may be considered

to include generally that large miscellaneous assortment of business enterprises which are similar in character to retail establishments, but which may not be accurately classified as such. Such an interpretation is suggested by the manner in which Section 13(a) (2) is drafted. Service and retail establishments are considered in the same sentence and the same criterion of intrastate commerce is made applicable to both.

"23. Many of the characteristics outlined above with respect to retail establishments are helpful in determining whether a given establishment is a service establishment within the meaning of section 13(a) (2). Service establishments are usually local in character, are usually open to the general consuming public and usually render a service to private individuals for direct consumption. The service is usually purchased in small quantities for private use rather than for industrial and business purposes. Further, the service is usually rendered at a 'retail' price."

In A. H. Phillips, Inc., v. Walling, 324 U.S. 490, 496, 65 S.Ct. 807, 810, 89 L.Ed. 1095, 157 A.L.R. 876, Mr. Justice Murphy discusses the term "retail establishment", used in the exemption clause, § 13(a) (2), as "epitomized by the corner grocery, the drug store and the department store". And in Fleming v. Arsenal Bldg. Corp., 2 Cir., 1941, 125 F.2d 278, 280 Judge Learned Hand in considering the phrase "service establishment" said: " * * * perhaps that phrase should be limited to those who serve consumers directly, like tailors, or garages, or laundries; the juxtaposition of retail selling and 'servicing' does indeed suggest as much."

These definitions emphasize the fact that the exemption applies to service establishments the principal activity of which are of a retail character, and not to the wholesale type of servicing establishment. The issues represented in A. H. Phillips, Inc., v. Walling, supra, was "whether employees working in the warehouse and central office of an interstate grocery chain store system are 'engaged in any retail * * * establishment' within the meaning of Section 13(a) (2) (of the Act) so as to be exempt from the wage and hour provisions".

The Court, in holding that they were not exempt, said that they were "performing wholesale duties in the very midst of the stream of interstate commerce"; that they "constantly deal with both incoming and outgoing interstate shipments"; and that "such tasks are completely unlike those pursued by employees of the small local retailers, who were the sole concern of Congress in Section 13(a) (2)". The high court also stated that any exemption under the Act must be "narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress"; and that "§ 13(a) (2) by its very terms exempts only those employers engaged in a retail or service establishment operating primarily in local commerce".

In Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed 383, Mr. Justice Burton, discussed the terms "retail" and "service" as used in § 13(a) (2). He stated, 326 U.S. at page 675, 66 S.Ct. at page 421, 90 L.Ed. 383: "The word 'retail' because of its ready contrast with 'wholesale' is generally more restrictive than the word 'service'. The two, however, are used so closely together in this statute as to require them to be interpreted similarly. This makes it appropriate to restrict the broader meaning of 'service' to a meaning comparable to that given the narrower term 'retail.' The words are put on a like level especially by their use in the alternative with the single word 'establishment' in the phrase 'any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce.' (Italics supplied.) Accordingly, in proportion as the meaning of the word 'retail' is restricted to sales made in small quantities to ultimate consumers to meet personal rather than commercial and industrial uses of those articles, so it is correspondingly appropriate to restrict the word 'service' to services to ultimate users of them for personal rather than commercial purposes. This is supported by judicial interpretation of the clause."

Also in the same opinion, 326 U.S. at pages 666 and 667, 66 S.Ct. at page 417, 90 L.Ed. 383, when discussing the exemption of § 13(a) (2) Mr. Justice Burton wrote:

"The second question is whether or not petitioner's employees are exempted from

the Act on the ground that petitioner is a 'service establishment' within the meaning of § 13(a) (2). The language of that clause is capable of two interpretations. If read in a detached and broad sense, it can be made to exempt from the Act the employees of the petitioner together with hundreds of thousands of other employees like them, to the serious detriment of the effectiveness of the Act. However, if read in connection with the declared purpose of the Act and in the light of its legislative history and administrative interpretation the clause does not reach employees 'engaged * * * in the production of goods for commerce' as were those in this case. When so read, the exemption reaches employees of only such retail or service establishments as are comparable to the local merchant, corner grocer or filling station operator who sells to or serves ultimate consumers who are at the end of, or beyond, that 'flow of goods in commerce' which it is the purpose of the Act to reach. See § 2, infra.

*     *     *     *     *     *

"The origin of this clause, § 13(a) (2), had nothing to do with establishments 'producing goods for [interstate] commerce.'

"It is rare, if not impossible, for an employee who is engaged in an occupation necessary to the production of goods for interstate commerce to be said to be at the same time an employee engaged in a retail or service establishment whose selling and servicing is confined to ultimate consumers. These employments are largely mutually exclusive. To the extent that sales or services are necessary for the production of goods for interstate commerce they generally are by that hypothesis not sales or services to an ultimate consumer for his personal use and, accordingly, are neither 'retail' sales nor services of a comparable character, within the meaning of § 13 (a) (2)."

The defendant's business was not local in character; it was not designed to attract the attention of the consuming public in the manner usually associated with retail establishments; it did not have any of the characteristics "epitomized by the grocery, the dry goods store and the department store" or of the usual retail "tailors, garages or laundries".

Even if the defendant's business, in which the plaintiff was engaged, were deemed a service establishment, it appears that the exemption would still be inapplicable because a substantial part of the servicing was devoted to non-retail business. A large percentage of the defendant-employer's servicing activities is furnished to private residences. Such services constitute about 83% of the business done by defendant. About ⅓ of this was procured from or through interior decorators and was handled with a commission to the interior decorator. The "services" were not rendered in a retail capacity but rather in the conduct of a wholesale business. About 55% of the defendant's business represented services furnished to private individuals, householders who were customers of defendant. They were located in all five boroughs, some on Long Island and others in Westchester County, so that even that business of the defendant was not of the "local" type contemplated by § 13(a) (2) of the Act.

Interpretative Bulletin No. 6 of the Wage and Hour Division of the Department of Labor observes in paragraph 18, with respect to the quantum of retail and nonretail services: "Thus, for example, an establishment which makes some nonretail sales nevertheless would be considered a retail establishment if the gross receipts from nonretail sales are not substantial in relation to the total gross receipts of the establishment. For purposes of enforcement the Administrator will ordinarily consider the nonretail selling of an establishment to be substantial if the gross receipts from such selling constitute more than one-quarter (25 percent) of the total gross receipts of the establishment."

See, also Brown v. Minngas Co., D.C. Minn. 1943, 51 F.Supp. 363.

In the instant case, where only 55% of the services rendered might be considered retail and at least 45% were non-retail, the amount of non-retail sales was substantial in relation to the gross receipts, and for that reason also the exemption § 13(a) (2) of the Act does not apply.

█ I have accordingly concluded that plaintiff was not employed in any business that comes within the exemption of § 13(a)

150

(2) of the Fair Labor Standards Act. His duties and services are covered by § 7 of the Act. He is entitled to a judgment for the overtime, for the liquidated damages and for a reasonable counsel fee as set forth in the Conclusions of Law. Settle a judgment accordingly, on two days' notice.