James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

IDAHO LUMBER COMPANY, Inc., a Corporation, Appellee.

No. 14406.

United States Court of Appeals Ninth Circuit.

June 24, 1955.

Stuart Rothman, Sol., Bessie Margolin, Chief of Appellate Litigation, Morton J. Marks, Atty., U. S. Dept. of Labor, Washington, D. C., Kenneth C. Robertson, Regional Atty., San Francisco, Cal., for appellant.

Albaugh, Bloem, Barnard & Smith, Idaho Falls, Idaho, for appellee.

Before BONE, ORR and CHAMBERS, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Idaho, Eastern Division, dismissing an action brought by the Secretary of Labor under Section 16(c) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq., to recover unpaid overtime compensation allegedly owing to four employees of appellee who worked at a Salmon, Idaho, sawmill.

The facts are generally agreed to be that appellee corporation is engaged at Salmon, Idaho, in the operation of a sawmill and planing mill for the production, sale and distribution of green and finished lumber. This action, which was initiated after the employees named in the complaint (Laverne F. Westfall, Sylvester Kramp, Clifford C. Pierce and Robert Horn) filed written requests that the Secretary of Labor bring this action on their behalf, seeks to recover for them unpaid overtime compensation for the periods of time in which the employees were engaged in the production of some goods for out-of-State shipment. During the times covered by this action appellee had been engaged in the production of lumber and lumber products consisting of a quantity of bean boxes and pallets which were shipped to seed processing plants of the Rogers Brothers Seed Company located outside the State of Idaho. Appellee's president testified that he knew the pallets and bean boxes were to be delivered outside the State of Idaho when he took the Rogers Brothers order in February, 1952, and that the lumber used in the manufacture of the bean boxes and pallets was produced in the Salmon, Idaho, mill after the order had been taken.

The Salmon, Idaho, operation was relatively new. The Secretary of appellee testified that: "We bought the property in August of 1950 and probably the first sale would have been made in September." In February, 1952, Mr. Johnson, the president and general manager of appellee, negotiated the contract for the out-of-State sale and shipment of the pallets and bean boxes here involved. It is not contested that the production of the lumber for the bean boxes and pallets and the fabrication thereof extended over a period of five months.

The total amount of sales of the corporation from its first operation until December 1952 was estimated by the corporation secretary-treasurer and bookkeeper to be $234,000. (This figure includes freight charges and extends beyond the period of the production here in question.)

It is undisputed that Kramp, Pierce and Horn were employed in the production of lumber to fill the Rogers Brothers order for the workweek ending March 28, 1952, through the workweeks ending May 30, 1952, and that Westfall was employed in the manufacture of these bean boxes and pallets for the workweek end-

ing May 9, 1952, through the workweeks ending August 28, 1952.

Out-of-State shipments of the pallets and bean boxes were made almost weekly for the period from May 21, 1952, until August 25, 1952. Appellee's gross sales for the months of May, June, July, and August 1952, totalled approximately $80,-000 of which $11,561.49,[1] or over 14% of the total gross sales, was for the pallets and bean boxes produced for shipment outside of the State of Idaho.

The district court, while finding that lumber products consisting of the pallets and bean boxes were shipped outside the State, concluded that since these goods were produced under a single contract, this contract constituted "an isolated transaction outside of the ordinary and usual course of defendant's business and operations, and, as such, did not constitute production of goods for interstate commerce within the meaning of the Fair Labor Standards Act."

The applicable language of the Fair Labor Standard's Act is very broad:

"§ 7 Maximum hours [29 U.S.C.A. § 207]

"(a) Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Although the above quoted language is all-inclusive except for the listed exceptions, the courts have carved out an exception when the transaction falls within the de minimis doctrine. However, the lower court did not rest its decision on the de minimis doctrine and appellee does not contend that it is here applicable. The lower court's decision emphasizes that this was an "isolated transaction" outside of the ordinary and usual course of appellee's business and operations. It wrote a very brief memorandum decision and the reasons for its decision are not readily apparent. However, it is conceded by appellee that the applicability of the Fair Labor Standards Act is not to be determined by the nature of the employer's business, but rather by the character of the employee's activities. In Kirschbaum v. Walling, 316 U.S. 517, at page 524, 62 S.Ct. 1116, at page 1120, 86 L.Ed. 1638 the Supreme Court said:

"The petitioners assert, however, that the building industry of which they are part is purely local in nature and that the Act does not apply where the employer is not himself engaged in an industry partaking of interstate commerce. But the provisions of the Act expressly make its application dependent upon the character of the employees' activities. And, in any event, to the extent that his employees are 'engaged in commerce or in the production of goods for commerce', the employer is himself so engaged."

See also Walling v. Jacksonville Paper Co., 317 U.S. 564, 571, 572, 63 S.Ct. 332, 87 L.Ed. 460; Overstreet v. North Shore Corp., 318 U.S. 125, 132, 63 S.Ct. 494, 87 L.Ed. 656; Tipton v. Bearl Sprott Co., 9 Cir., 175 F.2d 432, 435.

In Mabee v. White Plains Pub. Co., 327 U.S. 178, 181, 66 S.Ct. 511, 512, 90 L.Ed. 607 the Supreme Court said:

"Here, Congress has made no distinction on the basis of volume of

1. Appellee urges in its brief that:
"The Rogers Brothers Seed Company contract originally contemplated that $11,-561.49 of the bean boxes and pallets would be delivered to the customer's out-of-state plants, but the shipping records show that the customer later ordered a change in the place of delivery from the originally intended destination to its Idaho Falls plant of between $2000 and $3000 worth, for use in the latter plant. Accordingly, between $8,500 and $9,500 worth of these bean boxes and pallets were all that were actually delivered outside the State of Idaho."

business. By § 15(a)(1), 29 U.S.C. A. § 215(a) (1) it has made unlawful the shipment in commerce of '*any* goods in the production of which *any* employee was employed in violation of' the overtime and minimum wage requirements of the Act. Though we assume that sporadic or occasional shipments of insubstantial amounts of goods were not intended to be included in that prohibition, there is no warrant for assuming that regular shipments in commerce are to be included or excluded dependent on their size."

It is possible that the lower court was influenced by the first "assumption" noted in the last sentence of the above quoted language to the effect that "sporadic or occasional shipments of insubstantial amounts of goods" might not be within the orbit of the Act. But the Supreme Court also said that "there is no warrant for assuming that regular shipments in commerce are to be included or excluded dependent on their size." In the instant case the record shows that the shipments in interstate commerce were "regular" in that they were made almost weekly for a period of over three months. While the transaction represented the filling of but one contract, the amount of money involved and the extensive work on the part of the employees who requested the Secretary of Labor to bring this action, plus the fact that the production and fabrication of the goods at appellee's plant covered a period of five months, convinces this Court that the amount involved was "substantial."

The judgment is reversed and the cause remanded with instructions to enter judgment for the appellant for an amount equal to the difference between the wages actually paid to Westfall, Kramp, Pierce and Horn by appellee and the amount to which they were entitled under Section 7 of the Act during the period in question.