**James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**METALS TRANSPORTATION COMPANY, a corporation, Defendant.**

**Civ. No. 4219.**

United States District Court
D. Wyoming.

June 10, 1959.

John F. Raper, Jr., U. S. Dist. Atty., Cheyenne, Wyo., Stuart Rothman, Washington, D. C., Harper Barnes, Kansas City, Mo., and Reid Williams, Office of the Solicitor, U. S. Dept. of Labor, Denver, Colo., for plaintiff.

Brimmer & Brimmer, Rawlins, Wyo., for defendant.

KERR, Judge.

The Secretary of Labor, hereinafter referred to as "Secretary", brings this action to enjoin the Metals Transportation Company, a corporation, hereinafter referred to as "Company", from violating the overtime requirements of Section 15(a) (2) of the Fair Labor Standards Act, as amended (29 U.S. C.A. § 201 et seq.).

The matter is submitted to the Court upon the Secretary's complaint, the Company's answer and an agreed statement of facts.

The complaint avers that the Company has employed and is employing its employees in the production of goods for interstate commerce for workweeks longer than authorized by the Act since June 1, 1957, without compensating these employees for their hours of employment in excess of forty hours per week at rates not less than one and one-half times the regular rates at which they were employed.

The Company concedes the employment of approximately seventeen employees in the transportation of uranium ore from a mine to an ore processing plant north of Jeffrey City, Wyoming, and that the ore so transported was processed into uranium concentrate, which was later shipped outside the state of Wyoming.

The material portions of the agreed statement of facts are as follows:

"* * * 2. It is admitted that the employees of the defendant company whose rates of pay and wages are the subject matter of plaintiff's Complaint are those employees of the defendant who devote all or part of their time in the workweek in the hauling of raw ore from the uranium mines in the State of Wyoming in what is commonly known as the Gas Hills area of Fremont County, Wyoming to the uranium ore processing mill located near Jeffrey City, in Fremont County, Wyoming, together with certain employees of the defendant company who service and maintain the trucks driven by defendant's employees in these ore hauling operations.

"3. *It is also stipulated and agreed that the mines which produce this raw ore are owned or operated by Western Nuclear Corporation and also that the raw ore is processed into a uranium concentrate by Western Nuclear Corporation at its uranium processing mill and that this uranium concentrate is shipped regularly, repeatedly, and in substantial quantities to points outside the State of Wyoming by Western Nuclear Corporation. It is further stipulated and agreed that the defendant Metals Transportation Company does not engage in said mining activity except to haul raw ore from the mines to the mill over a private road, all in Fremont County, Wyoming, and does not in any way haul or handle the processed uranium concentrate.* (Emphasis supplied.)

"4. It is stipulated and agreed that Western Nuclear Corporation is a corporation separate and independent from defendant Metals Transportation Company and that defendant Metals Transportation Company performs these hauling operations of raw ore by contract arrangement with Western Nuclear Corporation.

"5. It is also stipulated and agreed that the employees involved in plaintiff's Complaint are engaged in actual truck driving operations or the servicing and maintaining of such trucks of the defendant Metals Transportation Company and that all of the transportation from the uranium mines to the uranium processing mill of this raw ore is over private roadways and private lands.

"6. That the period involved by plaintiff's Complaint begins with the first day of June, 1957, and continues to the date of trial herein.

"7. That the normal number of employees of defendant who are em-

ployed in such occupations as truck drivers or mechanics is approximately 17 employees, although there may be some slight fluctuation from week to week in the number of such employees.

"8. That all of these employees are employed by defendant Metals Transportation Company in such occupations because their work is necessary and directly essential to the transportation of the raw ore in the manner above described.

"9. That the work weeks of the employees above described under plaintiff's Complaint are those work weeks in which the employees have devoted all or part of their hours of work in the workweek to the transportation by defendant of the raw ore in the manner above described.

"10. That the defendant Metals Transportation Company during all of the period involved in this action has paid these truck drivers or mechanics at straight time hourly rates only for the hours worked in the workweek by such employees and that these employees regularly report each day to the superintendent employed by the defendant company on a daily time slip.

"That the regular straight time hourly rates of these employees vary between the employees from $1.75 per hour straight time to approximately $2.45 per hour straight time.

"11. That in many and repeated workweeks practically all of the above truck drivers or mechanics have worked over 40 hours in the workweek at the above described occupations of transporting this raw uranium ore or have devoted a part of their hours of work in such workweeks to such transportation work and were paid at their straight time hourly rates for all of their hours of work in the workweek and that defendant Metals Transportation Company has not paid any of such employees for their hours of work in excess of 40 hours in the workweek at rates of time and one-half their regular straight time hourly rates.

"12. Plaintiff by his agents has requested defendant Metals Transportation Company to commence paying such employees for their hours of work in excess of 40 hours in the workweek in the transportation of such raw uranium ore at rates not less than time and one-half their straight time hourly rates and the defendant Metals Transportation Company has refused and continues to refuse to pay such employees for their hours of work in excess of 40 hours in the workweek in the transportation of this raw uranium ore or in the servicing of such trucks at the overtime rate of one and one-half their straight time hourly rate for such hours of work in excess of 40 in the workweek.

"13. Plaintiff offers to show by his investigator Mr. B. J. Fawcett who has made an investigation of the operations of the defendant Metals Transportation Company and of the payroll records of defendant company for the period beginning June 1, 1957, and ending with the workweek ending July 24, 1958, and that this investigator Mr. B. J. Fawcett, if called as a witness would testify that his investigation of the payroll records of the defendant company for this period would show that the amount of overtime computed for this period for these employees would be in the gross amount of $8,341.21 due to 39 employees, past or present, employed during the period. A summary statement of the computations of such overtime made by plaintiff's investigator Mr. B. J. Fawcett is attached hereto as Exhibit A. By this paragraph of this stipulation defendant is not requested to admit the accuracy of these computa-

tions made by this investigator but admits only that the investigator if called as a witness would testify that the amount of overtime for these employees for the hours worked by these employees as shown on the records of the defendant company for such work as truck drivers or mechanics, would amount to the figure of $8,341.21 for these 39 employees.

"14. It is stipulated that no part of the overtime computed by plaintiff's investigator Mr. B. J. Fawcett has been paid by defendant to any of these employees and defendant denies that it is liable to such employees for such overtime or any part thereof."

Out of the pleadings and agreed statement of facts emerges a single question: "Are these truck drivers and truck mechanics engaged in producing goods for commerce within the meaning of the overtime provisions of Sections 7 and 15(a) (2)?" If they are so employed an injunction should issue.

■■ A question of whether an employee is engaged "in commerce" within the meaning of the Act is determined by practical considerations and not by technical conceptions. See Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Overstreet v. North Shore Corp., 318 U.S. 125, 63 S. Ct. 494, 87 L.Ed. 656. The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity. See McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538.

Here the parties agree that the raw ore is processed into a uranium concentrate by Western Nuclear Corporation and that the concentrate is shipped in substantial quantities to points outside the state of Wyoming.

■ A temporary pause of the ore to be refined into concentrate does not make it an intrastate transaction when the final destination is points outside of this state. See Walling v. Jacksonville Paper Co., 317 U.S. 564, 568, 63 S.Ct. 332.

The cases dealing with the construction of the Act are many and I shall cite a few: Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332; Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494; Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672; Walling v. Amidon, 10 Cir., 153 F.2d 159; Walling v. Mid-Continent Pipe Line Co., 10 Cir., 143 F.2d 308; Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745; Mid-Continent Petroleum Corporation v. Keen, 8 Cir., 157 F.2d 310; Bennett v. V. P. Loftis Co., 4 Cir., 167 F.2d 286.

In each of the above cases the employer contended he was not engaged in interstate commerce but in each case the courts held the employer to be a link in the chain of activities "in commerce" or in the production of goods for commerce.

In the case at bar the Company cannot isolate its hauling of the raw ore from the mine to the mill and escape the over-all sequence of placing the ore in the stream of activities which culminate in the interstate movement of uranium concentrate. The Company's activities are simply one link in the chain of commerce that brings the work within the purview of Section 7(a) of the Act.

From what I have said I hold the plaintiff is entitled to an injunction enjoining the Company from violating Section 15(a) (2) of the Act.

Counsel for the plaintiff will prepare findings of fact and conclusions of law, together with judgment, and submit the same within 20 days from the date of the filing of this memorandum and the Clerk will enter an order accordingly.