## GILLETTE v. ROCKLAND COACHES, Inc.

### No. 286.

Circuit Court of Appeals, Second Circuit.

May 8, 1944.

Ernest Mahler, of New York City (Charles R. Katz, of New York City, of counsel), for plaintiff-appellant.

Lexow & Jenkins, of Suffern, N. Y. (David H. Moses and Morton Lexow, both of Suffern, N. Y., of counsel), for defendant-appellee.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the plaintiff, an employee of Rockland Coaches, Inc., from a judgment dismissing his complaint and granting summary judgment for the defendant under the Fifth Defense of the answer. The action was to recover overtime under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The complaint alleged that the plaintiff was employed by the defendant at the latter's garage plant at Spring Valley, New York, and that pursuant to such employment he was required to perform, and did perform, the following services:

(a) checking and re-setting the socalled "National" ticket machines contained in each of 86 buses owned and operated by defendant;

(b) working at the gas pumps fueling buses;

(c) keeping records of oil supplied to buses;

(d) checking oil and tires;

(e) furnishing to drivers bridge tolls and tickets;

(f) changing insurance "stickers" on all buses; and

(g) fueling owners' cars.

The complaint further alleged that during the period between October 24, 1938 and October 24, 1940, plaintiff was employed for some 2900 overtime hours and by reason of such overtime was entitled under the Fair Labor Standards Act to receive $1,695.92 as liquidated damages, plus a reasonable counsel fee.

The defendant alleged in its answer as a Fifth Defense that it was a local motor bus carrier as defined in Section 13(a) (9) of the Fair Labor Standards Act and as such was not governed by the provisions of Sections 6 and 7 which prescribe minimum wages and maximum hours for employees engaged in commerce among several states, or from any state to any place outside.

Section 13(a) (9) provides that Sections 6 and 7 shall not apply to "any employee of a street, suburban, or interurban electric railway, or local trolley or motor bus carrier, not included in other exemptions contained in this section."

The defendant moved for a summary judgment in its favor on the ground that it is a "local * * * motor bus carrier" as defined in Section 13(a) (9) of the Fair Labor Standards Act of 1938. We think that the judgment to the defendant upon this motion was right and should be affirmed.

The sole question raised by this appeal is whether the defendant is subject to the provisions for wages and overtime of Sections 6 and 7 of the Fair Labor Standards Act, or is exempt from those provisions because, within the meaning of Section 13 (a) (9), it is a "local * * * motor bus carrier" as held by the court below.

The defendant transports "commuters" in interstate commerce who in the morning travel from their homes to their places of work and return at night. These commuters constitute about 75% of its traffic, which in addition consists of school children, shoppers and the general public. During the rush hours there is a headway of approximately three minutes for each bus going to New York City in the morning, and for each bus going from New York City to New Jersey in the evening.

The routes of the company begin in Spring Valley and Nyack, New York, and

go through Bergen County, New Jersey, to New York City over the George Washington Bridge. They terminate either at 167th Street near the George Washington Bridge, or at the Midtown Bus Terminal of New York, Inc., where other local motor bus operators from other points in New Jersey have their New York Terminus. The defendant picks up and discharges interstate passengers along its entire routes. These routes pass through suburban towns and villages in New Jersey and terminate in New York City, which is the principal place whither traffic goes and from which it comes. No baggage or bundles for the buses may be checked and only such luggage may be carried as can be handled by the passengers. There is a package or baggage rack in all buses for use by passengers but no trunks or packages are permitted of such size as to interfere with passengers in entering or leaving the bus.

The fares of all companies are fixed by zones, that is, from one municipality to another, rather than by mileage, and the buses will pick up and discharge interstate passengers all along their route. This is even true of buses marked "Express". To what extent interstate carriers may be given intrastate privileges over certain portions of their interstate routes is quite immaterial because the question before us is only whether the defendant is a local interstate carrier under the Fair Labor Standards Act and, as an interstate carrier, would have no obligations under Sections 6 and 7 of that Act.

The defendant operates under a Certificate of War Necessity issued by the Office of Defense Transportation certifying its operations as for "local service" and has no certification for "road", or "over the road", or "long haul" services. The certificate was issued after the defendant had submitted a detailed report as to its past activities. In order to determine whether an operator is a "local" operator the Office of Defense Transportation has laid down three alternative tests, the first and third of which are met by the defendant. Executive Orders Nos. 8989, 9156, General Orders O. D. T. 11 and 21, Instructions page 9:

"Local bus service. The following instructions apply to bus operations in 'local service', which include (1) those wholly within any municipality or urban community and a zone extending 15 air miles from the boundaries thereof, or between contiguous municipalities or urban communities, or (2) round-trip schedules on which the average revenue per passenger carried is not more than 35 cents, or (3) round-trip schedules whose principal traffic consists of the movement of workers en route between their homes and their places of employment, or the movement of persons between military or naval establishments and nearby municipalities or urban communities."

The Interstate Commerce Commission has described the business of interstate motor bus carriers as "local" in respect to the maximum hours of service of its employees when there is mass transportation morning and evening and frequent schedules are maintained, as between Newark, Jersey City and New York. Likewise it has relieved transportation carriers (on the ground that they are "local") from keeping a driver's log containing records of the time of each stop and of each crossing of a state line while on a schedule over a regular route "mainly in urban and suburban areas and when such regular route is not longer than 35 miles". Ex parte No. M. C. 2, 24 M. C. C. 415.

Similarly in Chapter 15, Article 1, Section 1 of Rules and Regulations, the City of New York has defined a Short Haul Omnibus as "an intrastate or interstate omnibus operating to or from a point not more than fifty miles from Columbus Circle in the City of New York". See decision in Bus Depot Holding Company v. Valentine, 288 N.Y. 115, 41 N.E.2d 913. Record on Appeal, page 626.

We think it clear that the Wages and Hours Administrator has given the words "local * * * motor bus carrier", in Section 13(a) (9), a meaning that excludes the defendant from the wages and hours provisions of Sections 6 and 7 of the Fair Labor Standards Act. In the First Annual Report of the Administrator he said (at p. 25) that "under Section 13 (a) (9), employees of a motor bus carrier, which confines its operations to the limits of one city and its suburbs have been regarded as exempt." Surely the defendant's mass transportation of commuters in and out of New York City by its buses brings it within the exemption referred to by the Administrator. On March 6, 1944, in another Bulletin, we find the following:

"The Administrator stated that he believed that 'local trolley or motor bus carrier' should be defined with reference to

the type of service rendered, and the characteristics peculiar to that service as distinguished from non-local or over-the-road carriage. There exist certain indicia which lend themselves to a determination of whether a carrier is, in fact, a local carrier. The indispensable characteristic of a local motor bus carrier is that it is a carrier which serves an integrated commercial or industrial area for the purposes of carrying persons to and from their work in offices and factories, children to and from school daily, and other persons attending to necessary routine business."

In addition to the foregoing general language of the Wage and Hour Administrator he has enumerated twelve indicia of a local bus carrier, the first three of which he has said were the most significant. We append them with the comment by defendant's counsel as to the general conformity to the tests.[1]

| [1] Indicia | Appellee's Operations |
|---|---|
| 1. The fare on a local bus route is either paid to the driver directly or deposited in a coin box. Tickets are not sold at terminals or other designated places for single trips. School tickets, weekly passes or commutation tickets are in some instances, however, used on local carriers. | All appellee's buses are equipped with National Cash Register Devices (fols. 54, 96) and a passenger when entering the bus pays his fare either in cash or by a slip from a commutation ticket (fol. 54), or, in some instances, by a ticket (fol. 54), and receives a receipt from a continuous tape (fol. 54) (Exhibit B). |
| 2. The fare on a local bus route is either a single fare for the entire route or is based on the number of zones through which a person travels. The fare is not based on the number of miles traveled. | The fares of appellee are based on zones (fols. 57, 90) 6 MCC 2o and 27 MCC 255—Tariffs filed with Interstate Commerce Commission (p. 8, *supra*). See Exhibit (B). |
| 3. Buses of a local carrier traverse the same route at frequent intervals, usually with a headway of less than one hour, and make frequent stops at designated places ordinarily spaced at a given number of feet. These operating schedules are generally speeded up during the morning and evening peak periods. | Appellee's buses travel at a headway of ½ hour all day long and three minutes at rush hours in the morning, and in the evening (fol. 53) (fol. 87). Appellee's buses pick up and discharge interstate passengers all along their route (fols. 55, 95). Stops are designated by the Police Department in N. Y. City. |
| 4. The buses used on local routes differ from the over-the-road buses in that the seats in the former are more narrowly spaced and the aisle is wider to accommodate standees. | Appellee's buses are known as the Class A in local traffic (fol. 96) and have room for standees (fol. 96). |
| 5. Local buses are built not to exceed a speed of approximately 45 miles per hour, while the top speed of the over-the-road bus approximates 65 miles per hour. The scheduled operating speed of a local bus is from 10 to 20 miles per hour while that of the over-the-road bus is from 30 to 40 miles per hour. | Average scheduled operating speed of appellee's buses is twenty miles an hour. See Schedules. |

The Administrator further states that "no hard or fast rule is possible and determination will depend upon appraisal of all of the facts."

In addition to the foregoing the Administrator did not intervene on the trial of this action or on this appeal as has been done by public agencies in other cases. Overstreet v. North Shore Corp., 318 U. S. 125, 63 S.Ct. 494, 87 L.Ed. 656. The Administrator also said in his bulletin of March 6, 1944, that the foregoing tests "were in accord with recent court decisions", evidently referring to the decision of the District Court in the case at bar and to that of the Sixth Circuit in Conley v. Valley Motor Transit Company, 139 F. 2d 692. The last decision broadly reached

| Indicia | Appellee's Operations |
|---|---|
| 6. Local buses are geared for the quick acceleration necessary for short runs in congested traffic. | Most of appellee's buses are so geared. |
| 7. Local buses do not maintain space for baggage, having at best a package rack for small items such as lunch boxes and packaged merchandise. Over-the-road buses have space, set aside in the rear, on the roof or within the bus for luggage, commonly required in traveling considerable distances. | No baggage or luggage is carried except what the passenger may have himself and only a rack is maintained (fol. 56) for such bundles as passenger may carry himself. |
| 8. Drivers of local buses are ordinarily paid on an hourly rather than a mileage basis. | Appellant concedes that appellee's drivers are paid on an hourly basis (fol. 83). |
| 9. Drivers of local buses do not make runs which prevent them from returning home each day after work. | No route of appellee is more than thirty-five miles in length so that a driver may be able to return home after each work day. |
| 10. Local bus carriers do not maintain schedules designed to make connections with over-the-road carriers nor are they engaged in carriage which is a continuation of over-the-road travel or preliminary thereto, or a part thereof. | Appellee makes no such connections. |
| 11. The statistical pattern of national over-the-road travel indicates a falling off of business during the winter, early spring and fall months with a sharp increase during the late spring and summer, traceable to pleasure trips taken during vacation periods. The statistical pattern for local bus travel depicts a low degree of travel during the late spring and summer months. | No proof in Record. Appellee is exclusively a commuting or short haul line. |
| *12. The annual average revenue per passenger carried on a local bus route is less than 20 cents. | No proof either way in the Record. |

* U. S. Dept. of Labor, Wage and Hour Decision found that this was an arbitrary division for statistical purposes only (See p. 47, infra).

the same conclusion that we have arrived at here upon a similar state of facts.

It seems evident from the above that the Administrator has acquiesced in the view that the defendant is a local interstate carrier and that he has added the weight of his interpretation, as the officer charged with the administration of the provisions relating to the wages and hours of employees, to that of the Office of Defense Transportation and of the Interstate Commerce Commission.

The decision of the District Court is further supported by the affidavit of George F. Cassidy, a traffic consultant of wide experience whose conclusion is not materially traversed that:

"In the metropolitan zone around New York City the interstate local operators are those who have routes of less than fifty miles and who transport commuters, shoppers, workers and school children. The usual practice is for the person to pay his fare to the driver upon boarding or leaving the bus, and receive from the driver a receipt. Most of these companies also have multiple trip arrangements whereby a ticket from a book is presented to the driver in lieu of cash. Most of these short haul or local operators pick up and discharge interstate passengers all along their routes and even where, because of prior franchises, there may be restrictions, it does not change the character of their operation."

There can be no doubt that the defendant's buses are maintained and run in general conformity to the twelve tests set forth by the Administrator. It is true that proof was lacking as to test No. 12, namely, that: "The annual average revenue per passenger carried on a local bus route is less than 20 cents."

But the Administrator states in his Bulletin of March 6, 1944, that "the first three tests * * * are the most significant", that "minor variations from the pattern will not defeat the exemption" and that "no hard and fast rule is possible,

and a determination would depend upon an appraisal of all the facts". Moreover, No. 12 is an indicium applicable to suburban interstate traffic in general, while suburban traffic in and out of New York City is specially burdened by high bridge and tunnel tolls. Cf. 6 M.C.C. 25, 36. There are, therefore, considerations applicable to the New York Metropolitan Area that would justify a somewhat higher average fare than in other parts of the country.

The appellant argues that the exemption from the wages and hour provisions of the Fair Labor Standards Act is not applicable to the case at bar because of the final words of Section 13(a) (9) "not included in other exemptions contained in this section". Section 13(b) provides that:

"The provisions of section 7 shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935."

We cannot see that Section 13(b) has any relevancy here. It refers to an exemption which is given employees as to whom the Interstate Commerce Commission may establish qualifications and maximum hours of service pursuant to Section 204(a) of the Motor Carrier Act, 49 U.S. C.A. § 304(a). It was held by the Supreme Court in United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345, that the power of the Interstate Commerce Commission under Section 204(a) is confined to those employees whose duties affect safety of operation and there is no claim that the plaintiff is such an employee. The contention that the plaintiff is not subject to the exemption set forth in 13(a) (9), or is given a double exemption, or any additional exemption by reason of the final words of 13(a) (9), seems entirely without basis.

For the foregoing reason the judgment is affirmed.