## PUBLIC SERVICE COORDINATED TRANSPORT
### v.
### The UNITED STATES.
### No. 136–64.

United States Court of Claims.

Oct. 14, 1966.

Charles B. McInnis, Washington, D. C., attorney of record, for plaintiff. Roger H. Muzzall, Richard R. Paradise, and McInnis, Wilson, Munson & Woods, Washington, D. C., of counsel.

Leonard S. Togman, Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant. Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Mastin G. White with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on June 20, 1966. On July 21, 1966, plaintiff filed a motion that the court adopt the commissioner's findings of fact, opinion and recommended conclusion of law. No exceptions have been filed by defendant and the time for so filing pursuant to the rules of the court has expired. Since the court agrees with the trial commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. Plaintiff's said motion to adopt is granted and plaintiff is, therefore, entitled to recover, together with interest as provided by law, and judgment is entered for plaintiff with the amount of recovery to be determined in accordance with Rule 47(c).

### OPINION OF COMMISSIONER*

WHITE, Commissioner:

The legal question involved in this case is whether a certain group of 307

* The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

buses—out of the total fleet of approximately 2,400 buses which the plaintiff, a common carrier of passengers by bus, operated during the 3-year period that began on July 1, 1959 and ended on June 30, 1962—were subject to, or exempt from, the Federal highway use tax.

The plaintiff has conceded at all pertinent times that some of the 2,400 buses in its fleet during the 3-year period previously mentioned were subject to the Federal highway use tax. Accordingly, the plaintiff duly filed Federal highway use tax returns for each of the three tax years, and paid taxes in the amount of $5,872.76 for the first year, in the amount of $10,835.13 for the second year, and in the amount of $28,281 for the third year.

However, the 307 buses with which we are concerned were not included by the plaintiff in its Federal highway use tax returns for the several years during the period July 1, 1959–June 30, 1962. When the plaintiff's tax returns were audited by the Internal Revenue Service, that agency held that the 307 buses were subject to the Federal highway use tax, and the IRS assessed against the plaintiff deficiencies totaling $52,266 for the three years, plus interest totaling $7,-604.34. The deficiencies and interest were duly paid by the plaintiff.

Thereafter, the plaintiff instituted the present action to recover the amounts of $52,266 and $7,604.34, together with statutory interest.

It is my opinion that the plaintiff is entitled to recover.

The Federal highway use tax is imposed by Section 4481 of the Internal Revenue Code of 1954, as amended. Subsection (a) of that section provided in part as follows during the time that is involved in the present case:

**(a) Imposition of tax.**

A tax is hereby imposed on the use of any highway motor vehicle which

* * * has a taxable gross weight of more than 26,000 pounds * * *.[1]

The evidence in the record shows that 307 buses involved in the litigation were highway motor vehicles, that they were used by the plaintiff on the public highways of the United States during each of the tax years within the period July 1, 1959–June 30, 1962, and that each of the buses had a taxable gross weight of more than 26,000 pounds. Accordingly, the language just quoted from Section 4481 (a) of the 1954 Code, as amended, clearly covered the 307 buses.

The plaintiff contends, however, that the 307 buses were exempted from Section 4481 by virtue of subsection (c) of Section 4483 of the 1954 Code, as amended, which provided as follows during the 3-year period involved in the present litigation:

**(c) Certain transit-type buses.**

Under regulations prescribed by the Secretary or his delegate, no tax shall be imposed by section 4481 on the use of any bus which is of the transit type (rather than of the intercity type) by a person who, for the last 3 months of the preceding year (or for such other period as the Secretary or his delegate may by regulations prescribe for purposes of this subsection), met the 60-percent passenger fare revenue test set forth in section 6421(b) (2) as applied to the period prescribed for purposes of this subsection. [26 U.S. C. § 4483(c) (1958).]

It is clear from the evidence in the record that the plaintiff during the 3-year period July 1, 1959–June 30, 1962, met the 60-percent passenger fare revenue test mentioned in the subsection quoted above. Therefore, the plaintiff's claim of exemption turns upon the question of whether the 307 buses involved in

1. 26 U.S.C. § 4481(a) (1958). The tax rate through June 30, 1961 was $1.50 a year for each 1,000 pounds of taxable gross weight or fraction thereof, but the rate was increased from $1.50 to $3 effective July 1, 1961 by virtue of an amendment that was made by Section 203 (a) of the Federal-Aid Highway Act of 1961 (75 Stat. 122, 124).

the litigation were "of the transit type (rather than of the intercity type)."

The plaintiff argues that the 307 buses were transit type buses and not intercity type buses, while the defendant argues that the 307 buses were intercity type buses and not transit type buses.

For many years, there have traditionally been two different types of bus service—local bus service and intercity bus service—provided by common carriers of passengers by bus in this country.

Local bus service is generally corner-to-corner service within a single urban area. A person using the traditional type of local service can get on a bus at one street corner and ride to the next street corner or to a more distant point within the particular urban area. Masses of passengers are handled during rush hours, as the inhabitants of the urban area ride to or from work. This requires a high degree of frequency in the operation of buses along each route (e. g., every 3 minutes) during rush hours, whereas adequate service can be rendered on a less frequent basis (e. g., every 15 minutes) during non-rush periods. Space and facilities for many standees are needed during rush hours. In view of the corner-to-corner nature of the traditional type of local bus service, buses in such service customarily operate at relatively slow rates of speed; and in view of the relatively slow speed and the comparatively short distance traveled by the average local bus passenger, the comfort of passengers is of less importance in the traditional type of local bus service than in intercity bus service.

The traditional type of intercity bus service is generally operated from a terminal in the downtown portion of one urban area to a terminal in the downtown portion of another urban area. If intermediate stops are made, they are usually limited to one stop per intermediate town or city. It is not customary for the service to be more frequent than once every hour, and the frequency of service varies very little, if any, as between rush periods and non-rush periods, since the average passenger is not a commuter. A person using the traditional type of intercity bus service is ordinarily taking an occasional trip and is accompanied by baggage. In traveling between cities, intercity buses generally operate at the maximum permissible rate of speed. Because of the high rate of speed and the long distances traveled by most passengers, the comfort of passengers is a major concern in the traditional type of intercity bus service.

As different types of vehicles are needed for the two traditional types of bus service, the manufacturers of buses have developed and provided for bus transportation companies a type of bus commonly known as a transit type bus to be used in providing the traditional local service, and a type of bus commonly known as an intercity type bus to be used in the traditional intercity service. The characteristics of the transit type bus and of the intercity type bus are detailed in the findings of fact.

Approximately 20 years ago, as many persons working in the downtown portions of large urban areas began to establish their residences in rather distant suburban towns, the need arose for, and common carriers of passengers by bus began to provide, a sort of bus service that varies somewhat from the traditional local bus service and the traditional intercity bus service. For the sake of convenience, this variation in bus service will usually be referred to hereafter in the opinion as suburban bus service.

In suburban bus service, an inbound bus customarily provides corner-to-corner service in a suburban town, or perhaps in a succession of suburban towns, and then operates as an express at a relatively high rate of speed for a substantial distance to a downtown terminal located near the center of the urban area served by the particular line. A passenger boarding such a bus at one street corner in a suburban town can ride to the next street corner or to some other

street corner within the same town, or to a street corner in another suburban town (if the particular line serves two or more suburban towns), or to the downtown terminal near the center of the urban area served by the particular line. Fares are graduated in relation to the distances traveled by passengers.

An outbound bus in suburban bus service loads passengers at the downtown terminal near the center of the urban area served by the particular line, then proceeds at a relatively high rate of speed as an express to the suburban town or towns served by the line, and then provides corner-to-corner service within such town or towns.

Since a carrier providing suburban bus service customarily transports large numbers of commuters to and from work, frequency of service (e. g., every 3 minutes) is essential during the morning and afternoon rush hours. Less frequent service (e. g., every 15 minutes) is usually adequate during non-rush hours.

As a bus in suburban service travels at a relatively high rate of speed over a substantial distance, the comfort of passengers is an important consideration in suburban bus service.

In order to meet the vehicular needs of common carriers furnishing suburban bus service, bus manufacturers developed and began to provide approximately 20 years ago a modification of the traditional transit type bus that would be suitable for suburban bus service. In about 1960, the term "suburban" came into usage for application to the new variety of bus, and this term will be utilized hereafter in the opinion for the sake of convenience. Since the suburban type bus carries passengers for greater distances, and much of the time at considerably higher rates of speed, than the traditional transit type bus, the suburban type bus provides passengers with more comfortable conditions than are provided by the traditional transit type bus. On the other hand, since the suburban type bus customarily carries passengers for shorter distances than the traditional intercity type bus, the suburban type bus is less comfortable than the traditional intercity type bus.

During the 3-year period that began on July 1, 1959 and ended on June 30, 1962, the plaintiff provided—and it still provides—common carrier service on regularly scheduled bus routes for 391 municipalities in the State of New Jersey, for New York City and Greenwood Lake in the State of New York, for Philadelphia and Allentown in the State of Pennsylvania, and for Wilmington in the State of Delaware. It carries approximately a million passengers per day, Monday through Friday of each week. On Saturdays, the plaintiff carries approximately 70 percent of the weekday average; and on Sundays, it carries approximately 50 percent of the weekday average.

Many of the bus lines operated by the plaintiff provide the traditional type of local bus service wholly within a single urban area, such as Newark or Jersey City or Elizabeth in the State of New Jersey. On these lines, the plaintiff utilizes buses that are clearly of the transit type. The plaintiff has not paid the Federal highway use tax in connection with such buses, and the defendant has not attempted to assess the Federal highway use tax in connection with such buses.

Some of the bus lines operated by the plaintiff provide the traditional type of intercity bus service between New York City and Atlantic City and Cape May, New Jersey, or between New York City and Allentown, Pennsylvania. On these lines, the plaintiff utilizes buses which it concedes are of the intercity type. The plaintiff has voluntarily paid the Federal highway use tax in connection with such buses.

Other bus lines operated by the plaintiff provide suburban bus service between towns in northern New Jersey and New York City, or between towns in

southern New Jersey and Philadelphia. The plaintiff utilizes suburban type buses on such lines. The 307 buses involved in the present litigation were the suburban type buses that were utilized by the plaintiff in providing suburban type service during the 3-year period July 1, 1959–June 30, 1962. The plaintiff has involuntarily paid, pursuant to deficiency assessments made by the Internal Revenue Service, the Federal highway use tax in connection with such buses for the 3-year period just mentioned. The problem before the court is whether these suburban type buses were exempted from the tax by the statutory exemption in favor of "any bus which is of the transit type (rather than of the intercity type)."

The suburban type bus is, basically, an improved transit type bus, although the suburban type bus resembles the intercity type bus in some respects. In this connection, some comparisons between buses that are clearly the transit type, buses that are clearly the intercity type, and suburban type buses will be set out in a series of succeeding paragraphs.

The transit type bus generally has folding or jackknife or accordion doors, with one door at the front of the bus and another door in the center or at the rear of the bus where passengers may exit. The intercity type bus generally has a sedan type door, which is a full door that is hand-controlled by the operator, which swings out over the curb when the bus stops to pick up passengers, and which provides greater protection against the weather and outside noises that the folding type of bus door. The intercity type bus has only a single door at the front of the bus, and does not have a center or rear exit door. The suburban type bus has a folding or jackknife or accordion door at the front of the bus. It does not have a center or rear exit door.

The transit type bus has 78³⁄₁₆ inches of head-room. The intercity type bus has 75⅝ inches of head-room. The suburban type bus has 78³⁄₁₆ inches of head-room.

The transit type bus generally has longitudinal, stationary, straight-back seats over the wheelhousings, and has stationary, forward-facing seats elsewhere, the seat-backs being fixed at an angle of 70 degrees from the floor. The cushioning on the seats of the transit type bus is comparatively thin. The intercity type bus has adjustable reclining seats, with each individual passenger being able to control the angle of his own seat-back in relation to the floor of the bus. The seats on the intercity type bus are comfortably cushioned; and all of them are forward-facing. The suburban type bus has stationary seats, with the backs of the seats fixed at an angle of 70 degrees from the floor. The back of the seats are slightly higher, and the padding in the seats is slightly thicker, than the seats used in the transit type bus. The suburban type bus has only forward-facing seats, and does not have longitudinal seats over the wheelhousings.

The transit type bus generally has a distance of approximately 28 or 29 inches from the back of one forward-facing seat to the front of the forward-facing seat immediately behind it. The intercity type bus generally has a distance of approximately 34 inches between seats. The suburban type bus generally has a distance of approximately 31 inches between seats.

The transit type bus generally has windows for the benefit of standees, so that they may have good vision. The intercity type bus does not have windows for standees. The suburban type bus generally does not have windows for standees.

The transit type bus generally has an aisle width of approximately 20 inches between the rows of forward-facing seats, with more aisle space between the longitudinal seats. The aisle area on the transit type bus is for standees, especially during rush hours. The intercity type bus has an aisle width of approximately 14 inches between the rows of seats. The suburban type bus

generally as an aisle width of approximately 15 inches between the rows of seats.

The transit type bus generally has overhead straps or bars, and grab-rails or upset-grips on the seats, for the convenience of standees. The intercity type bus does not have such facilities for standees. The suburban type bus generally has grab-rails or upset-grips on the seats that can be used by standees, but generally does not have overhead straps or bars for the use of standees.

The transit type bus is designed to carry large numbers of standees during rush hours. The intercity bus is not designed to carry standees. The suburban type bus is designed to carry a few standees during rush hours.

The transit type bus does not have either parcel racks or an under-floor baggage compartment for the storage of passengers' parcels or baggage. The inter city type bus has both overhead parcel racks and an under-floor baggage compartment. The suburban type bus has overhead parcel racks but does not have an under-floor baggage compartment.

The transit type bus does not have a rest room. Many intercity type buses are equipped with rest rooms. The suburban type bus does not have a rest room.

The transit type bus has a crowd-gate to keep standees from interfering with the driver's operations. The intercity type bus does not have a crowd-gate. The suburban type bus is generally equipped with a crowd-gate.

The transit type bus does not have arm-rests on the seats. The intercity type bus has arm-rests on the seats. The suburban type bus has arm-rests on the seats.

The transit type bus has a *maximum* speed of approximately 45 miles per hour. The intercity type bus is capable of traveling at a speed of 75 miles an hour or more. The suburban type bus has a maximum speed of approximately 58 miles per hour.

It has been previously noted that Section 4483(c) of the Internal Revenue Code of 1954, in granting an exemption from the highway use tax with respect to "any bus which is of the transit type (rather than of the intercity type)," expressly authorized the Secretary of the Treasury (or his delegate) to promulgate regulations concerning the exemption. Pursuant to the authority vested in him, the Secretary has defined the term "transit type" bus in the following language:

(b) *Buses of the transit type.* The term "transit type", when used in the regulations in this part with reference to a bus, means the type of bus which is designed for the mass transportation of persons within an urban area, as distinguished from the intercity-type bus. A transit-type bus is ordinarily distinguishable from an intercity-type bus by comparison of seats, doors, and baggage facilities. The transit-type bus usually has straight-back seats of the bench type, while the intercity-type bus generally has seats which either can be reclined or are in fact permanently fixed in a reclining position. The transit-type bus is more likely to have an accordion or folding-type door at the front of the bus, and often has a second door in the middle or at the rear for passengers to leave the bus, as *opposed to the emergency-type rear door which may or may not be included* in the intercity-type bus. The typical transit-type bus *does not have facilities for storing baggage whereas, the* typical intercity-type bus has facilities *for storing baggage in a compartment* underneath the floor of the bus or in overhead racks, or both. Other *characteristics which may be taken* into account in distinuishing a transit-type bus from an intercity-type bus include *gear ratios, acceleration and* maximum speed, and aisle space for standees. The transit-type bus ordinarily has a *lower gear ratio to provide for quick starts and because, in* general, buses of this type are operated at low speeds. The intercity-type bus

ordinarily has a higher gear ratio and can be operated at much higher speeds. The transit-type bus usually has wider aisles, with overhead straps or bars to accommodate standees. [26 C.F.R. § 41.4483–2(b).]

The various factors mentioned by the Secretary in the quoted regulation as distinguishing the transit type bus from the intercity type bus will be set out and applied to the suburban type bus with which we are concerned in the present case.

"The transit-type bus usually has straight-back seats of the bench type, while the intercity-type bus generally has seats which \* \* \* can be reclined \* \* \*." The evidence in the record indicates that the reference in the regulation to "straight-back seats of the bench type" is really applicable only to the longitudinal seats that are placed over the wheel-housings in the traditional transit type bus. The forward-facing seats on the transit type bus and the seats on the suburban type bus are stationary, with the seat-backs fixed at an angle of 70 degrees from the floor of the bus. Neither the traditional transit type bus nor the suburban type bus has adjustable reclining seats similar to those on the intercity type bus.

"The transit-type bus is more likely to have an accordion or folding-type door at the front of the bus, and often has a second door in the middle or at the rear for passengers to leave the bus \* \* \*." The suburban type bus has an accordion or folding-type door at the front of the bus. It does not have a second door in the middle or at the rear of the bus.

"The typical transit-type bus does not have facilities for storing baggage whereas the typical intercity-type bus facilities for storing baggage in a compartment underneath the floor of the bus or in overhead racks, or both." The suburban type bus has overhead parcel racks, but does not have an under-floor compartment for the storage of baggage.

"The transit-type bus ordinarily has a lower gear ratio to provide for quick starts and because, in general, buses of this type are operated at low speeds. The intercity-type bus ordinarily has a higher gear ratio and can be operated at much higher speeds." The suburban type bus has a higher rate of speed than the traditional transit type bus and a substantially lower rate of speed than the traditional intercity type bus.

"The transit-type bus usually has wider aisles, with overhead straps or bars to accommodate standees." The suburban type bus has an aisle width of approximately 15 inches, in contrast to the aisle width of approximately 20 inches in the traditional transit type bus and the aisle width of approximately 14 inches in the traditional intercity type bus. The suburban type bus does not have overhead straps or bars to accommodate standees, but does have grab-rails or upset-grips on the seats that can be used by standees.

The imposition of the Federal highway use tax, and the exemption from this tax, of "any bus which is of the transit type (rather than of the intercity type)," originated in Title II of H.R. 10660, 84th Congress, U.S.Code Cong. & Admin. News 1956, p. 2822. In explaining the exemption to the House of Representatives, the committee report (H.Rep.No. 2022, 84th Congress, 2nd Session) made the following statements:

An exemption is provided from this use tax for *mass* or *local* transit buses. Under the bill buses need not pay this tax, even though weighing more than 26,000 pounds when loaded if—

(1) The bus in question is a transit-type bus, as distinct from a bus designed for longer distance transportation, and

(2) at least 60 percent of the passenger fair revenue of the bus system involved was attributable to fares exempt from the excise tax on the transportation of persons (on the grounds that they do not exceed 35 cents or are commutation fares).

What constitutes a transit-type bus is to be determined under regulations by taking into account the usual

characteristics of a *local*, as distinguished from a *longer haul*, bus. The *local* bus, for example, would be likely to have folding doors toward the rear of the bus, little or no facilities for storing baggage, lower gear ratios, wider aisles, and a lesser maximum speed. The 60-percent test in paragraph (2) above would be determined on the basis of the fares in the last quarter of the prior year or any other period prescribed by the Treasury Department. [At page 43; emphasis added.]

\*    \*    \*    \*    \*

The phrase "transit type" bus designates the type of bus which is designed for the *mass* transportation of persons *for relatively short distances*. This type of bus is to be distinguished from the intercity type of bus (or the *longer-distance* type of bus).

The main characteristics of a transit-type bus on the basis of which it is distinguishable from an intercity bus are the seats and doors and the lack of facilities for storing baggage. The transit type bus usually has straight-back seats of the bench type, while the intercity bus will generally have seats which either can be reclined or are in fact permanently fixed in a reclining position. The transit bus is more likely to have an accordion or folding-type door at the front of the bus, and often has a second door in the middle or at the rear for passengers to leave the bus (as opposed to the emergency-type rear door which may or may not be included in the intercity bus). The typical transit bus will not have facilities for storing baggage whereas the typical intercity bus will have facilities for carrying baggage in a compartment underneath the floor of the bus or in overhead racks, or both.

Other *characteristics* of a transit-type bus which may be taken into account in distinguishing it from an intercity bus include gear ratios, acceleration and maximum speed, and aisle space for standees. The transit bus ordinarily has a lower gear ratio to provide for quick starts and because, in general, such buses are operated at lower speeds. The intercity bus will have a higher gear ratio and will be able to be operated at much higher speeds (usually well in excess of 50 miles per hour). The transit type bus usually has wider aisles, with overhead straps or bars to accommodate standees. [At pages 62–63; emphasis added.]

The committee statements previously quoted indicate that when the Congress granted an exemption from the highway use tax in favor of "any bus which is of the transit type (rather than of the intercity type)," Congress intended to distinguish between buses designed for local service, on the one hand, and buses designed for long-haul service, on the other hand, with the former receiving the benefit of the exemption. In this connection, the case of Gillette v. Rockland Coaches, 142 F.2d 616 (2nd Cir. 1944), is of special interest. The question involved in that case was whether Rockland Coaches was subject to the provisions of the Fair Labor Standards Act of 1938 prescribing minimum wages and maximum hours for employees "engaged in commerce or in the production of goods for commerce" (29 U.S.C. §§ 206, 207 (1940)). The term "commerce" was defined in the act to mean "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof" (29 U.S.C. § 203(b) (1940)). Another portion of the act stated, however, that the sections prescribing minimum wages and maximum hours should not apply to "any employee of a \* \* \* local \* \* \* motor bus carrier \* \* \*" (29 U.S.C. § 213(a) (9) (1940)).

Rockland Coaches operated a bus service that was patronized principally by persons commuting between suburban towns and New York City. About 75 percent of the company's traffic consisted of commuters who traveled in the morning from their homes in the suburbs to

their places of work in New York City, and who then returned home again at night. The remaining 25 percent of the company's passengers were school children, shoppers, and the general public. During rush hours, the company operated a bus about every 3 minutes on each route. The company's routes began in Spring Valley and Nyack, New York, then went through suburban towns and villages in Bergen County, New Jersey, and terminated in New York City, either at 167th Street, near the George Washington Bridge, or at the midtown bus terminal. The company picked up and discharged interstate passengers throughout the length of its routes. Fares were graduated on a zone basis.

The Court of Appeals (speaking through Circuit Judge Augustus N. Hand) held that Rockland Coaches was a "local * * * motor bus carrier" and, therefore, was exempt from the wage and hour provisions of the Fair Labor Standards Act of 1938.

Since the exempting language used by Congress in Section 4483(c) of the Internal Revenue Code of 1954, as amended, speaks only in terms of "any bus which is of the transit type (rather than of the intercity type)," the suburban type buses that are involved in the present case must be related either to transit type buses (thus receiving the benefit of the exemption) or to intercity type buses (thus being denied the benefit of the exemption). In this connection, it has been previously mentioned that, according to the evidence in the record, the suburban type bus with which we are concerned is a modification of and an improvement on the traditional transit type bus, and more nearly resembles the traditional transit type bus than it resembles the traditional intercity type bus. Accordingly, it is my opinion that the suburban type bus involved in this case should be regarded as a transit type bus, rather than as an intercity type bus, for the purposes of Section 4483(c) of the 1954 Code. On that basis, the plaintiff is entitled to recover in the present action.